513 A.2d 1041

**COMMONWEALTH of Pennsylvania**

v.

**Victor REDDIX, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 18, 1986.

Filed Aug. 6, 1986.

Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Edward M. Clark, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before KELLY, MONTGOMERY and HESTER, JJ.

KELLY, Judge:

Appellant was arrested September 27, 1984 and charged on November 9, 1984 with three counts of robbery, two counts of receiving stolen property and one count of criminal conspiracy. Appellant filed an Omnibus Pre-trial motion on April 10, 1985 asserting, *inter alia*, lack of probable cause to stop the car in which appellant was a passenger on the evening of September 27, 1984 and lack of probable cause to arrest. Hearing on that motion, and the trial, were assigned to the Honorable Judge Lee of the Court of Common Pleas. On April 25, 1985, the day of appellant's trial, two co-defendants pleaded guilty before Judge Lee; that same day Judge Lee denied appellant's suppression motion. Nonetheless, appellant waived his right to trial by jury and proceeded to trial without jury before Judge Lee.

Appellant was adjudicated guilty on all but one of the robbery counts. After denial of motion for new trial and/or arrest of judgment, appellant was sentenced on July 21, 1985 to a period of incarceration. This appeal timely followed.

The facts of this case were aptly summarized by the court below:

> On September 27, 1984, at approximately ten o'clock p.m., Valerie McIntosh, Susan Lippert and Janet Bartoletta were seated in a bus shelter in Munhall. They were approached by three black males who attempted to take their purses. One of the actors knocked down Ms. Lippert, who was in her ninth month of pregnancy, and the actors fled with her purse and Ms. Bartoletta's. The actors then entered a large reddish or brownish car driven by a fourth black male which drove off in the direction of Whitaker Borough. The women reported the robbery to a mill guard; Munhall police arrived in a short time and interviewed the women, receiving a partial license plate number, a description of the car and its direction of travel, and a description of the actors. Munhall police radioed these descriptions to the Whitaker police who spotted a car fitting this description in Whitaker and pursued it into Rankin. Whitaker police stopped the car in Rankin and, after the arrival of assistance from police officers from Rankin and several other neighboring municipalities, a search of the car was conducted which revealed Ms. Lippert's and Ms. Bartoletta's purses. Defendant Victor Reddix and co-defendants Robert Spencer, James Phillips and Robert Johnson, the occupants of the car, were placed under arrest.
>
> At the scene, the victims identified both their property and the actors.

(Trial Opinion at 3–4). Appellant raises three contentions on direct appeal of his conviction: (1) The trial court erred in failing to suppress certain inadmissible evidence; (2) The trial court erred in failing to recuse itself after appellant's codefendants had pleaded guilty before it; (3) The evidence was not sufficient to sustain appellant's conviction. We shall address these issues *seriatim.*

I

The appellant first contends that the trial court erred in failing to suppress evidence which was gained by the illegal

stop and search of a vehicle in which he was a passenger. Appellant has maintained since the filing of his pre-trial motion and subsequent suppression hearing that his stop and arrest were improper because there was no probable cause to stop the car in which appellant was a passenger, and because the Whitaker police had no jurisdiction to make the stop and subsequent arrest in Rankin Borough. He then asserts that the evidence is tainted by the illegality. We disagree with both contentions and find no merit in the proffered arguments.

Initially we note that our function as an appellate court reviewing a denial of a motion to suppress is to determine:

[W]hether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. W.P.,* 302 Pa.Super. 66, 69, 448 A.2d 97, 98 (1982). Moreover, when the evidence viewed in this manner supports the factual finding of the suppression court this Honorable Court can reverse only if there is an error in the legal conclusion drawn from those factual findings. *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975).

■ The existence of probable cause is determined by an examination of whether:

"the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Wagner,* 486 Pa. 548, 556, 406 A.2d 1026, 1030 (1979), quoting *Commonwealth v. Perry,* 468 Pa. 515, 520, 364 A.2d 312, 315 (1976). "A warrantless arrest for a felony will be upheld where police have probable cause to believe (1) that a felony has been

committed and (2) that the person to be arrested is the felon." *Commonwealth v. Derrick,* 322 Pa.Super. 517, 532, 469 A.2d 1111, 1119 (1983). An arresting officer, in executing a valid arrest, may rely upon radio broadcasts emanating from police facilities provided, however, that the arresting officer has been either (1) ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest; (2) received information justifying arrest; or (3) heard information which, coupled with facts he personally observed, provided probable cause to arrest. *Commonwealth v. Gambit,* 274 Pa.Super. 571, 577–578, 418 A.2d 554, 557 (1980), aff'd., 501 Pa. 453, 462 A.2d 211 (1983). *Accord Commonwealth v. Prengle,* 293 Pa.Super. 64, 67, 437 A.2d 992, 994 (1981).

*Commonwealth v. Evans,* 343 Pa.Super. 118, 128, 494 A.2d 383, 388 (1985).

█ Applying the law to the facts of the instant case, the trial court properly found that probable cause existed to validate the stop and arrest. Officer Facciano of the Munhall Police Department, after talking with the victims, broadcast a detailed description of the suspects. He noted the suspects were fleeing in a "brownish early model vehicle" and that of the three "young black males" described by the victims, one was wearing a red shirt, one a blue-gray jogging top. He also noted that the car had fled in the direction of the Rankin bridge. (N.T. at 18–19). Relying on this broadcast information, Officer Karnes of the Whitaker Police Department stationed his marked police vehicle on the Whitaker side of the bridge. From his vantage point he was able to see the car drive by and in the glare of his car beams he specifically noted that one of the four occupants of the brownish car was wearing a blue-gray jogging top. The correlation of the broadcast description with the details the officer observed gave rise to probable cause to stop the vehicle.

Furthermore, the fact that there were four black youths in the car rather than three as broadcast over the police radio does not invalidate the finding of probable cause.

*Commonwealth v. Bunch,* 329 Pa.Super. 101, 477 A.2d 1372 (1984). The court in *Bunch* concluded it was reasonable for the arresting officer to conclude that some three of the four occupants of the car were suspects. Similarly, we believe it was reasonable of Officer Karnes to conclude that some three of the occupants of the car matching the broadcast description were the suspects.

Once he stopped the car in Rankin Borough after it crossed the bridge, the Officer observed other items, further correlating to the broadcast description and further buttressing the probable cause requirements. *Commonwealth v. Prengle, supra.* Officer Karnes spotted a red shirt "stuffed down between two of the occupants in the rear." (N.T. 26). Thus there is ample evidence on review to affirm the finding of probable cause to arrest.

■ However, this finding of probable cause will be irrelevant if the arrest was effectuated without proper authorization. The statute conferring jurisdiction on officers making arrests outside of their primary jurisdiction is 42 Pa.C.S.A. § 8953, Statewide Municipal Police Jurisdiction Act. That statute specifies six "cases" or situations wherein officers may act outside their primary jurisdiction. Cases 2, 3, and 6 are applicable in the circumstances of appellant's arrest. They read as follows:

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S.A. § 8953(a)(2)(3)(6). The circumstances of this case present us with an unique situation. Jurisdictional authority to pursue the felons must be traced first from the Munhall Borough to Whitaker Borough and then from Whitaker into the Borough of Rankin. Appellant contends that this exact situation is not covered by any statutory case and so is not covered by the statute. We, however, disagree with appellant, and affirm the finding of jurisdictional authority.

First, under a mutual aid agreement between Munhall and Whitaker Boroughs, the officers of Whitaker had "all the powers and authority conferred by law" that the police of Munhall would have. 53 Pa.C.S. § 46202(35). Second, the officers were requested to aid in apprehending the suspects. 42 Pa.C.S.A. § 8953(a)(3). Thus, jurisdictional authority was properly passed from the Munhall to Whitaker police.

Next, the Whitaker officers were in "hot" or "fresh" pursuit of the suspects as they passed from Whitaker into Rankin Borough. 42 Pa.C.S.A. § 8953(a)(2). The concept of hot pursuit applies even though the officers were not originally at the scene of the crime but initiated their pursuit in response to a radio broadcast to aid a fellow officer. *See Commonwealth v. Brown*, 298 Pa.Super. 11, 444 A.2d 149 (1982). Moreover, the Whitaker officers had probable cause to believe a felony had been committed, due to the radio broadcast; they attempted to identify themselves as police officers, and then gave chase to the vehicle in a marked police car with the lights flashing and siren sounding. 42 Pa.C.S.A. § 8953(a)(6). This gave Whitaker police authority to conduct the search and arrest in Rankin. Thus the arrest, effectuated outside the borough where the offense occurred, was sustained by valid jurisdiction. Therefore, we deny appellant's contention and affirm the lower court as to this first issue for review.

## II

Appellant's second issue presented for review states that the trial judge should have recused himself in order to

avoid the appearance of impropriety. The trial judge had, the same day that the appellant went to trial, heard the guilty pleas of appellant's co-defendants and had presided over appellant's suppression hearing.

Initially, we must consider the applicable standard of review.

> The party who asserts that a trial judge must be disqual-ified bears the burden of producing evidence establishing bias, prejudice or unfairness necessitating recusal. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). Furthermore, the 'decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.' *Commonwealth v. Kane*, 199 Pa.Super. 89, 91, 184 A.2d 405, 406 (1962).
>
> In general a 'trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned.' *Commonwealth v. Good-man*, 454 Pa. 358, 361, 311 A.2d 652, 654 (1973) (quoting from A.B.A. Standards Relating to the Function of the Trial Judge § 17).

*Commonwealth v. Darush*, 501 Pa. 15, 21, 459 A.2d 727, 731 (1983).

Judge Lee clearly had no doubt of his ability to preside impartially in this criminal case. The question remains as to whether appellant met his burden of proof in asserting that Judge Lee's impartiality can reasonably be doubted. We find that appellant has not met his burden of proof, and thus we affirm Judge Lee's decision not to recuse.

Although our research has not uncovered cases dealing with the issue of recusal of a trial judge under these exact circumstances, there are cases enunciating the standard for when a trial judge presides over the pre-trial suppression hearing. The facts of *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973) are on point. In *Goodman*, our Supreme Court held that " ... a judge should honor a request for recusation where prejudicial information is re-ceived in a pre-trial proceeding that would be otherwise

inadmissible during the trial of the cause." *Goodman,* 311 A.2d at 654. The case before us is clearly distinguishable. Judge Lee correctly decided that the evidence presented at the suppression hearing was admissible in toto, and thus the Judge was not prejudiced by hearing it.

Morevoer, appellant has failed to demonstrate that Judge Lee, in handing down a conviction of guilt, acted out of "bias, prejudice or unfairness." *Perry, supra.* We take into consideration two pertinent facts which the trial judge relied upon in his opinion. The first is that the trial judge would have discovered the fact of the co-defendant's guilty pleas when the co-defendants took the stand as Commonwealth witnesses. Appellant's trial counsel knew the Commonwealth intended the co-defendants to take the stand and testify against appellant. The second is that appellant and his trial counsel chose to go forward with a non-jury trial before Judge Lee, armed with the knowledge that Judge Lee had heard the co-defendants' guilty pleas and had decided against recusal. Appellant nonetheless decided to forego his option of trial by jury. Surely appellant and his counsel made a duly informed decision, and impliedly placed trust in the fact that the trial judge had not been prejudiced by this knowledge of co-defendants' guilty pleas. *See United States ex rel. Bennett v. Myers,* 381 F.2d 814 (3rd Cir.1967) (Where trial judge had heard co-defendant's guilty plea, decision by counsel to continue with trial before same judge was "an acknowledgment" that trial judge was not prejudiced and constituted no basis for recusal). Accordingly we affirm the lower court with regard to the second issue.

### III

■ Appellant's third and final contention is that the evidence was insufficient to support the verdict. Our standard on review is that the evidence must be read in the light most favorable to the verdict winner, with all reasonable inference arising therefrom. *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984); *Commonwealth v. Mad-*

*ison,* 501 Pa. 485, 462 A.2d 228 (1983). In this case the verdict winner, the Commonwealth, called co-defendant James Phillips as a witness; he testified as to appellant's role in the crimes charged. This testimony, once found credible, is sufficient to support the verdict beyond a reasonable doubt. The trial judge found Phillips' testimony to be credible and we will not disturb this finding on review. Issues of credibility are for the trier of fact to determine and will not be disturbed on review. *See Commonwealth v. Vazquez,* 328 Pa.Super. 86, 476 A.2d 466 (1984); *see Commonwealth v. Yohn,* 271 Pa.Super. 537, 414 A.2d 383 (1979). Therefore we find no merit to appellant's final allegation and again affirm the trial court.

Judgment of Sentence AFFIRMED. Jurisdiction relinquished.