584 A.2d 1002

COMMONWEALTH of Pennsylvania, Appellee,

v.

Carletta M. TODD, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 7, 1990.

Filed Jan. 8, 1991.

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before DEL SOLE, BECK and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from a judgment which sentenced Appellant Carletta M. Todd (hereinafter "Appellant") for one count of Possession with Intent to Deliver a Controlled Substance, (cocaine) 35 Pa.S. § 780–113(a)(30), and one count of Possession of Controlled Substance, (cocaine), 35 Pa.S. § 780–113(a)(16).[1] The court denied Appellant's pretrial suppression motion. The suppression hearing testimony was incorporated, by stipulation, into Appellant's subse-

---

1. The Judgment reads:

AND NOW, September 29, 1989, Defendant, Carletta Todd is sentenced to pay a fine of $25,000 to the Commonwealth, pay costs of prosecution, and undergo imprisonment of not less than four (4) years or more than ten (10) years and shall be committed to the custody of the Bureau of Correction for confinement in the State Correctional Institution at Muncy, or such other State Correctional Facility therein to receive females, and shall be delivered to the State Correctional Facility at Muncy, there to be kept, fed, clothed and treated as the law directs.

DATE OF LAST COMMITMENT: May 4, 1989

By the Court:

Kelly, J.

The court sentenced Appellant pursuant to the Mandatory Sentencing Provisions of 18 Pa.C.S. § 7508(a)(3).

quent non-jury trial. The convictions and Appellant's sentence ensued. A timely filed post-trial motion for new trial and/or in arrest of judgment was denied, preserving the issues on appeal. We vacate the judgment of sentence and remand.

On Wednesday, September 14, 1988, Police Officers Barbara Roberts and Anthony O'Learchick, agents from the Attorney General's Bureau of Narcotics Investigation and Drug Control, were on a regular assignment at the Greater Pittsburgh International Airport, staking out smugglers from known "drug source" cities. Appellant disembarked U.S. Air Flight 444, which originated in Miami.[2] According to the court below:

> [Appellant] caught [the police officers'] eye. As Roberts later described it, [Appellant's] walk was deliberate and awkward, as though something was restricting the movement of her legs. Further adding to the officers' suspicions was [Appellant's] full, bulky clothing. They knew from their training that these characteristics were consistent with methods used by people transporting narcotics. Accordingly, Roberts and O'Learchick followed [Appellant] ...

Trial court opinion, at p. 2.

Appellant placed her one piece of luggage, a plastic bag that she was carrying, and her purse, on a security check x-ray machine. During x-ray of the suitcase, Agent Roberts observed two oblong packages therein. Appellant then checked in at the connecting gate. The officers, who were not in uniform, approached Appellant and identified themselves. Agent Roberts displayed her badge. Appellant agreed to talk to the officers, and indicated to them that she had been in Florida visiting with family. Roberts asked to see Appellant's ticket, which had been issued in the name of "Tonya Green". This ticket had been purchased with cash, and no baggage stubs were attached thereto. Appellant Todd responded to Roberts' inquiries by indicating that her name was Tonya Green, and that she had no identification

---

2. This was a non-stop flight connecting to Washington D.C.

with her. Roberts asked for consent to search Appellant's suitcase, explaining that she had observed two oblong packages therein. Appellant agreed. Roberts filled in a consent index card and indicated that Appellant's "carry on bags/purse/person" would be searched. At this point Appellant became "very nervous". The officer instructed Appellant that she had the right to refuse the search. Appellant indicated that it would embarrass her, and twice conveyed her refusal. Roberts once again inquired about Appellant's identification. Appellant replied that it had been stolen from her hotel room. Because Roberts found this to be inconsistent with prior indications concerning a family visit, she decided to perform a pat-down search. Upon Appellant's request, the search was conducted in a ladies room, and four plastic bags containing a white substance were discovered in Appellant's belly area.[3]

Based on the above, the trial court concluded:

[T]here [is no] question, based on the information solicited from [Appellant], together with the police officers' own observations and their knowledge of the drug courier profile, that specific and articulable facts existed to indicate that criminal activity was taking place. [Citation omitted]. [Appellant], a 19–year–old young woman, of average height and weight, waddled through the terminal in a belabored fashion. She wore bulky, flowing clothing. She continually looked over her shoulder as she made her way from one end of the terminal to the other. She checked no baggage. She paid for her ticket in cash. She carried no identification. She had spent a very short period of time in a key drug trafficking city. She became noticeably distraught when confronted with the possibility of a body search. All of these factors, if taken alone, might, arguably, be consistent with innocent behavior. When viewed as a whole, however, they created a reasonable degree of suspicion of criminal activity, which the agents were permitted to investigate in the least intrusive

3. Later testing revealed that the substance was 78 percent cocaine by weight.

manner available. [Citations omitted]. The subsequent *Terry*[4] pat-down satisfied that criterion.

Trial court opinion, at pp. 4–5.

Based on the above, the court concluded that "[t]he resultant discovery of substantial quantities of cocaine,[5] therefore, was the product of a non-coercive encounter[6] which, in turn, gave rise to suspicions, based on articulable facts, which justified the *Terry* search and produced the illegal contraband." (Trial court opinion, at 5.)

Appellant, claiming an absence of specific facts which would have led a reasonable person to believe that she was engaged in criminal activity, argues that her Fourth Amendment rights (as interpreted by *Terry*) have been violated. She maintains that even were the initial interception something other than a "seizure", a seizure ensued upon the officers' request for her ticket, identification, and permission to search. It is her position that even if the officers could articulate reasons for a *Terry* stop, none existed for a *Terry* search. Moreover, the failure to reveal a weapon, allegedly undercut any basis for further exploration. Appellant contends that the stop, detention, search, and arrest violated her Fourth Amendment rights, and she advocates the suppression of all fruits produced as a result. Moreover, she claims an absence of probable cause to search, or to arrest prior to searching.

We note that the factual findings made by the suppression court are not in dispute. As such, our role on appeal is to determine if the conclusions of law drawn from those

4. The court refers to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).

5. The agents discovered four plastic baggies containing 996.2 grams of cocaine "... secured against [A]ppellant's belly and between her legs with a spandex girdle ..." (Commonwealth Brief, at p. 7).

6. Based on *Commonwealth v. Brown*, 388 Pa.Super. 187, 189, 565 A.2d 177, 178 (1989), the court found "that [Appellant] was never 'seized' prior to her actual arrest, within the meaning of the Fourth Amendment. Rather, ... the initial contact [was] a 'mere encounter', a non-coercive interaction which occurred in a public place for the purpose of making inquiries." (Trial court opinion, at pp. 3–4.) "... [Appellant] had several avenues of egress available to her, and she could have simply walked away." (Citation omitted. *Id.* at p. 4.)

findings are correct. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 516, 513 A.2d 1041, 1042 (1989). Reversal is appropriate only where there is error in the legal conclusions drawn from the facts. *Id.*

In *In the Interest of Kathleen Jermaine*, 399 Pa.Super. 503, 582 A.2d 1058 (1990), our Court asserted:

> Not every encounter between a citizen and the police is so intrusive as to trigger the protections provided by the Fourth Amendment to the United States Constitution. There is nothing in the Constitution which prevents a policeman from approaching a person on a public street or in a public place in order to make inquiries of that person. "A seizure of a person sufficient to trigger the protections of the Fourth Amendment occurs 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" Factors to be considered in determining whether an encounter with police rises to the level of a seizure of the person include "whether the officer makes a show of authority or exercises force, the officer's demeanor and manner of expression, the location, and the content of any interrogatories or statement are relevant to the determination."

*Id.*, 399 Pa.Super. at 508, 582 A.2d at 1060. (Citations omitted.)

 Under circumstances less concrete that those of the instant appeal,[7] our court in the above case held that: "[The officer's] encounter with [defendant] did not rise to the level of a seizure of her person which invoked Fourth Amendment protections." *Id.*, 399 Pa.Super. at 514, 582

---

**7.** In *Jermaine*, drugs were found in a bag carried by a juvenile from a rail station in New York City to Philadelphia. An Amtrak narcotics officer based in New York contacted the arresting officer in Pennsylvania, and relayed his suspicions about defendant. These suspicions were based on the following: Defendant purchased a one-way ticket with cash, defendant waited for the second call before boarding the train, defendant kept looking over her shoulder, and, defendant maintained eye contact with the New York officer. Upon arriving in Philadelphia, defendant appeared nervous, and denied having a train ticket as well as any identification.

A.2d at 1063. Likewise, prior to Appellant's withdrawal of consent, there was not a Fourth Amendment seizure in the case at bar. Rather, the contact between the police and Appellant amounted to a non-coercive encounter for the purpose of making inquiries. *Commonwealth v. Brown, supra.* [8] The encounter, however, developed into something more upon the officer's decision to proceed with a pat-down search despite Appellant's lack of consent. At this point the entire incident ripened into a "custodial detention". *See, Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412 (1988). A search incident to a lawful arrest would have followed if probable cause existed to support said detention. *See, Commonwealth v. Stainbrook,* 324 Pa.Super. 410, 471 A.2d 1223 (1984) (Warrantless search is proper where incident to a lawful arrest); *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), *appeal denied,* 521 Pa. 617, 557 A.2d 721, and 521 Pa. 621, 557 A.2d 724 (1989) (Police officer may briefly detain suspect and then actually search if facts gleaned during detention ripen into probable cause to arrest; for purposes of the Fourth Amendment, absence of formal arrest is not dispositive). It is our conclusion, however, that such cause was absent. According to the Commonwealth, "[I]t is not the Commonwealth's position that [the drug courier profile] characteristics, standing alone, would authorize, arguendo, a custodial detention. However, the facts gleaned through investigation here support a finding of probable cause." (Commonwealth Brief, at p. 35). We disagree. Taken together with the drug courier characteristics which the officers observed, and which were discussed above, any finding of probable cause would have to rest on the following: Appellant's awkward gait, the tension displayed by Appellant when she

8. As indicated by the Commonwealth:
 The agents wore no uniforms; displayed no weapons; did not summon but approached [A]ppellant; requested, not demanded, [A]ppellant's identification and ticket, which were promptly returned; the parties were in a public concourse of an airport; and nothing suggested that [A]ppellant had any objective reason to believe that she was not free to leave. (Commonwealth Brief, at p. 8).

learned that her body may be searched, the withdrawal of consent, (not unusual reactions for anyone confronted with such a threat to their privacy), and a conceivably "inconsistent" reply to police inquiries. Probable cause exists only where the facts and circumstances would warrant a reasonable person, at the time of arrest, to believe that an offense had been committed, and that the suspect was the perpetrator. U.S.C.A. Const.Amend. 4; *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986). There was no such cause herein. Accordingly, the evidence produced during the search was not incident to a lawful arrest, and should have been suppressed.

Judgment of sentence vacated, and case remanded for a new trial consistent with this opinion. Jurisdiction relinquished.