665 A.2d 1201

COMMONWEALTH of Pennsylvania

v.

Samuel GLADDEN, Appellant.

Superior Court of Pennsylvania.

Argued July 12, 1995.

Filed Sept. 26, 1995.

Thomas E. Naughton, Philadelphia, for appellant.

Anthony V. Pomeranz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, P.J., and CAVANAUGH, McEWEN, DEL SOLE, TAMILIA, KELLY, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

KELLY, Judge:

In this opinion, we are called upon to determine primarily whether evidence of constructive possession and accomplice liability presented at trial is sufficient to support an appellant's conviction of the crime of possession of an instrument of crime. We hold that evidence of constructive possession and accomplice liability is sufficient to support an appellant's conviction of possession of an instrument of crime. Accordingly, we affirm.

The relevant facts and procedural background are as follows. In the early evening, on March 11, 1992, Charles Jenkins and Craig Williams went to a house located at 2950 N. Lawrence Street in Philadelphia carrying $3,000.00 in cash with which they intended to purchase crack cocaine.[1] When Jenkins and Williams arrived at the front door of Cintron's house, the appellant, Samuel Gladden, admitted them. Jenkins and Williams told the appellant what they were seeking. The appellant asked Jenkins where the money was; Jenkins displayed the $3,000.00. The appellant told Jenkins and Williams that the quantity of drugs that they wished to purchase was not available at that time. The appellant in-

---

1. The house was owned by the brother and sister-in-law of the appellant's co-defendant, Wilfredo Cintron. At trial, a neighbor testified that the owners were not occupying the house, and that Cintron was frequently there in their absence.

structed them to leave and return later, implying that he would make the necessary arrangements to obtain the quantity and type of drugs that they required. After Jenkins and Williams left the house at 2950 N. Lawrence Street, the appellant went to the home of Luis Rosado at 2941 N. 4th Street. Rosado was present with his wife and a friend named "Heavy D". The appellant knocked on the front door; Rosado answered, opening the door. The appellant asked Rosado "if [he] want to do a stick up to two black males from $3,000.00 cash." (N.T. May 13, 1993 at 279). Rosado asked the appellant how he knew the males had the money. The appellant answered that they had showed it to him. Rosado refused the appellant's request because, as he explained at trial, "I'm not into doing stick-ups." (*Id.* at 280). The appellant left Rosado's house.

Approximately one half-hour later, the appellant returned to Rosado's house. Rosado answered the door when the appellant knocked on it. When Rosado opened the door, he saw the appellant accompanied by Wilfredo Cintron's nephew. The appellant again asked Rosado if he would participate in robbing the two black males. Rosado answered in the negative but Rosado's friend, Heavy D, agreed to help and left the house with the appellant and Wilfredo Cintron's nephew. Approximately ten minutes later, the appellant returned to Rosado's house. This time, the appellant asked Rosado if he "wanted to make a direct sale to two black males for him." (*Id.* at 281). Rosado agreed to conduct the sale for the appellant, and proceeded to the house at 2950 N. Lawrence Street.

Once Rosado arrived at Cintron's house, he waited in the living room with the appellant. Rosado asked the appellant if the drugs that he had agreed to sell were in the house. The appellant answered, "No." Shortly thereafter, "Julio," the appellant's supplier, arrived at the house, carrying a paper bag which contained sixty-three bundles of crack cocaine. Rosado counted twenty "blue caps" or vials of cocaine in each

bundle. Rosado then placed the drugs under a table in the living room.

Soon, Jenkins and Williams returned to complete their purchase of the drugs. The appellant answered their knock on the door. Jenkins and Williams entered the living room accompanied by the appellant. Rosado asked them if they had the money. Jenkins said, "Yes," then asked if Rosado had the "material," meaning the drugs. (*Id.* at 284). Rosado answered, "Yes." The appellant and Rosado then advanced toward Jenkins and Williams and patted down both men for weapons. Rosado found a handgun tucked into Jenkins' waistband. Rosado asked Jenkins again if he had the money. Jenkins said, "Yes," removed the money from the right hand pocket of his leather jacket, and placed it in Rosado's hand. Rosado removed the rubber band which held the money, counted it, then wrapped the rubber band around the bills, and returned them to Jenkins, who placed the bundle back into his jacket pocket. At that point, "Heavy D" emerged from his hiding place under the stairway, holding a sawed-off shotgun. "Heavy D" told Jenkins and Williams to take out their guns and put them down. Jenkins and Williams ignored him. "Heavy D" again told the buyers to put their guns down. Williams ran to the front door as Wilfredo Cintron emerged from the kitchen wielding a .357 handgun. The appellant attempted to block the exit, but Williams then Jenkins managed to escape from the house into the street. "Heavy D" fired the sawed-off shotgun, hitting the door. Then, he ran outside into the middle of the street where he fired at least three more shots. Wilfredo Cintron fired his gun first from the kitchen where he had been hiding, then he too ran out of the house, up the street, firing approximately four shots. The appellant and Wilfredo Cintron's nephew also went outside. Rosado remained at the doorway, armed with only a BB gun which he testified did not function properly. (N.T. May 13, 1993 at 289). Rosado testified that the appellant and Wilfredo Cintron's nephew were unarmed. (*Id.*). Meanwhile, Jenkins was shot once he and Williams were outside. The police transported Jenkins to Episcopal Hospital where he was pro-

nounced dead as a result of the gunshot wound.[2]

Arrest warrants were issued for the appellant, Wilfredo Cintron, and Luis Rosado. On March 24, 1992, the appellant was arrested and charged with murder, voluntary manslaughter, involuntary manslaughter, robbery, possession of an instrument of crime, carrying firearms in a public street or in a public place, carrying firearms without a license, criminal conspiracy, simple assault, aggravated assault, and recklessly endangering another person. On May 11, 1993, a jury trial before the Honorable David N. Savitt ensued.[3] The appellant was found guilty of murder in the second degree[4] and possessing an instrument of crime.[5] Immediately following dismissal of the jury, Judge Savitt imposed a sentence of life imprisonment for the appellant's conviction of second degree murder. Sentencing on the possession of an instrument of crime was deferred. On March 16, 1994, Judge Savitt heard and denied post verdict motions. The court then imposed a sentence of not less than one year nor more than two years imprisonment for the crime of possession of an instrument of crime; the sentence was to be served concurrently to the appellant's sentence of life imprisonment for his conviction of the crime of second-degree murder. The appellant filed a timely appeal on March 21, 1994. Following appellate argument, and the circulation of a proposed opinion, a panel of this

2. The gunshot wound was perforating or through and through. The entry wound was over the left buttock, 38 inches above [the decedent's] heel or 30 inches below the top of his head. It was four inches from his spine. This wound was an inch long and passed through the skin, the soft tissue, including the muscle, entered his abdominal cavity or his belly, it passed through his bony pelvis and small bowel as well as large bowel, and cut across a major blood vessel in his groin area. . . . The exit wound was in the right groin. . . . [The bullet] totally severed the iliac artery which is the major artery. And damaged large and small bowel as well. . . . [The injury] would [have] produce[d] death in a reasonably short period of time.
(N.T. May 14, 1993 at 426–27).

3. The appellant and Wilfredo Cintron were tried together; Luis Rosado entered a plea of guilty to third degree murder and testified against the appellant and Cintron at trial.

4. 18 Pa.C.S.A. § 2502.

5. 18 Pa.C.S.A. § 907.

Court elected to certify one issue to the Court *en banc.* The original panel subsequently withdrew their opinion.

Appellant raises the following issues on appeal:

I. DID THE TRIAL COURT ERR IN PERMITTING THE JURY TO EXAMINE APPELLANT'S STATE-MENT DURING DELIBERATIONS. [sic] THROUGH THE TESTIMONY OF A POLICE DE-TECTIVE?

II. WAS THERE SUFFICIENT EVIDENCE AS A MATTER OF LAW TO SUSTAIN APPELLANT'S CONVICTIONS, IN THAT:

 A. THERE WAS NO EVIDENCE PRESENTED THAT APPELLANT WAS IN ACTUAL OR CONSTRUCTIVE POSSESSION OF AN IN-STRUMENT OF CRIME;

 B. THE UNDERLYING FELONY ENGAGED IN BY APPELLANT FROM WHICH COMPLAIN-ANT'S DEATH AROSE WAS NOT ONE OF THE STATUTORILY ENUMERATED FELO-NIES REQUIRED TO SUSTAIN A SECOND DEGREE MURDER VERDICT;

 C. THE EVIDENCE ONLY ESTABLISHED THE APPELLANT'S MERE PRESENCE AT THE CRIME SCENE.

Appellant's Brief at 3.[6]

■ The appellant argues that the reading of his confession by the court reporter to the jury after they had been sent out to deliberate violates Rule 1114 of the Pennsylvania Rule of Criminal Procedure, which states that the jury cannot have, *inter alia,* a copy of any written confession by the defendant with them while they deliberate. The reading, the appellant

6. In actuality, these issues were raised by appellant in his original brief, not the substituted brief submitted for the Court *en banc.* After the original panel decided these issues, issue IIA was certified to go to this Court *en banc.* After certification was granted, the original panel withdrew their opinion. Therefore, because no disposition has been made yet as to these issues, we feel compelled to address them.

alleges, violated the spirit of the law because it placed undue emphasis upon the testimony. We disagree.

Rule 1114 states that upon the jury's retiring for deliberations, it shall not be permitted to have, *inter alia,* any written confession by the defendant. Pa.R.Crim.P. 1114.[7] In this case, however, the rule does not apply as stated above: the jury was not given a written confession, part of the trial transcript, or any of the other things specifically prohibited by Rule 1114. Therefore, Rule 1114 is inapplicable. "When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request." *Commonwealth v. Johnson,* 421 Pa.Super. 433, 438–39, 618 A.2d 415, 418 (1992), *affirmed,* 538 Pa. 148, 646 A.2d 1170 (1994) (citing *Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984)); *Commonwealth v. Ingram,* 404 Pa.Super. 560, 591 A.2d 734 (1991), *allocatur denied,* 530 Pa. 631, 606 A.2d 901 (1992); *Commonwealth v. McBall,* 316 Pa.Super. 493, 499, 463 A.2d 472, 475 (1983). Furthermore, so long as there is not a flagrant abuse of discretion, this decision should not be overturned on appeal. *Id.* (citing *Commonwealth v. Fontaine,* 183 Pa.Super. 45, 47, 128 A.2d 131, 132 (1956)).

In the instant case, there was a weekend between the time that Detective Jastrzembski testified regarding the appellant's statement to the police and the time that the jury was sent out to begin their deliberations. Seven minutes after being dismissed to begin their deliberations, the jury sent to the court the following question: "Your Honor, may we please see Samuel Gladden's statement to the police?" (N.T. 5/17/93 at 634). The trial court refused to honor their request. The jury again retired to deliberate. The following request was

7. Rule 1114 of the Pennsylvania Rules of Criminal Procedure states *in toto:*

> Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.
>
> Pa.R.Crim.P. 1114.

sent out within minutes: "Your Honor, we are requesting that Detective Jastrzembski's testimony [be] read back to us—slowly." (*Id.* at 647). The trial court exercised its discretion and granted this request because the jury needed to refresh its memory. *See Commonwealth v. Johnson, supra.* The trial court had the court reporter read back the entire testimony of Detective Jastrzembski, both direct examination and cross-examination so that neither part was emphasized more than the other. Based on the circumstances of the instant case, we conclude that there was no flagrant abuse of discretion by the trial court in permitting the testimony to be read to the jury. *See Commonwealth v. Bell, supra* (no abuse found when direct examination but not cross-examination of witness was read to jury by court reporter where trial was interrupted by a weekend and a holiday, and testimony in question was given two days prior to case going to the jury). Consequently, we hold that the trial court did not err in allowing Detective Jastrzembski's testimony to be read to the jury.

With regard to the allegation that insufficient evidence existed to convict the appellant of possessing an instrument of crime, the appellant argues that he was an employee and not a principal in the drug operation. The appellant asserts that he was personally unarmed and lacked the ability to control the actions of the armed individuals. The appellant maintains that there was insufficient evidence regarding whether he had actual or constructive possession of a weapon. Therefore, the appellant concludes, the judgment of sentence relating to the conviction of possessing an instrument of crime should be vacated. We disagree.

The standard for reviewing a sufficiency claim is well established.

In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Commonwealth v. Hanes,* 361 Pa.Super. 357, 361, 522 A.2d 622, 623–24 (1987); *Commonwealth v.*

*Reddix*, 355 Pa.Super. 514, 519, 513 A.2d 1041, 1045 (1986); *Commonwealth v. Duffy* 355 Pa.Super. 145, 154–55, 512 A.2d 1253, 1260–61 (1986). If a [trier of fact] could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992); *Commonwealth v. Berkowitz*, 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992).

*Commonwealth v. La*, 433 Pa.Super. 432, 459, 640 A.2d 1336, 1350 (1994), *allocatur denied*, 540 Pa. 597, 655 A.2d 986 (1994); *Commonwealth v. Wood*, 432 Pa.Super. 183, 199–200, 637 A.2d 1335, 1343 (1994).

▆▆▆ To show that a party is guilty of possessing an instrument of crime, the Commonwealth must prove three elements beyond a reasonable doubt. It must be proven that (1) a defendant possessed the instrument with the intent to employ it criminally; (2) the instrument is one commonly used for criminal purposes; and (3) a defendant possessed the instrument under circumstances not manifestly appropriate for lawful uses. *Commonwealth v. Foster*, 438 Pa.Super. 40, 44, 651 A.2d 163, 165 (1994); *Commonwealth v. Correa*, 437 Pa.Super. 1, 10, 648 A.2d 1199, 1203 (1994), *allocatur denied*, 540 Pa. 617, 657 A.2d 487 (1995); *Commonwealth v. Meekins*, 434 Pa.Super. 587, 590, 644 A.2d 765, 766 (1994). *See* 18 Pa.C.S.A. § 907. Instantly, because the appellant was not in actual possession of an instrument of crime during the robbery, in order for the appellant to be found guilty of possessing an instrument of crime, the Commonwealth had the burden of proving that the appellant was in constructive possession of an instrument of crime during the attempted commission of the robbery. *Commonwealth v. Nelson*, 399 Pa.Super. 618, 625, 582 A.2d 1115, 1118 (1990), *allocatur denied*, 527 Pa. 664, 593 A.2d 840 (1991).

To prove constructive possession of an item, the Commonwealth must show that the defendant had both the intent and the ability to control the item. *Commonwealth v. Hamm*, 301 Pa.Super. 266, [269,] 447 A.2d 960, 962 (1982),

*citing Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968). At the least, the evidence must show that the defendant knew of the existence of the item. *Commonwealth v. Hamm, supra* 447 A.2d at 962 [citations omitted]. Possession may also be proved by circumstantial evidence. *Commonwealth v. Carter,* 304 Pa.Super. 142, [147,] 450 A.2d 142, 144 (1982). Individually, the circumstances may not be decisive; but, in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control, which is required to prove constructive possession. *Commonwealth v. Carter, supra* 450 A.2d at 144 [citations omitted].

*Commonwealth v. Nelson, supra* 399 Pa.Super. at 625–26, 582 A.2d at 1119. *See Commonwealth v. Wilson,* 493 Pa. 332, 426 A.2d 575 (1981) (where evidence established that defendant and his compatriots acted in concert and collusion, defendant could be convicted of murder of the third degree and possessing an instrument of crime even though it was not proved that defendant fired fatal shot); *Commonwealth v. Smith,* 490 Pa. 329, 416 A.2d 494 (1980) (evidence sufficient to support conviction for possession of instrument of crime where defendant did not possess gun but exhibited the "intent of promoting" the shooting); *Commonwealth v. Nelson, supra* (defendant's conviction for possession of instrument of crime was sufficiently supported by evidence that his co-felon during robbery brandished gun and that defendant threatened to have co-felon "take care of" victims if they did not cooperate). *See also Commonwealth v. Breslin,* 194 Pa.Super. 83, 165 A.2d 415 (1960) (possession of burglary tools need not be in the manual possession of a party and may be in joint possession); *Commonwealth v. Dionisio,* 178 Pa.Super. 330, 116 A.2d 109 (1955) (in prosecution for unlawful possession of burglary tools, tools found in defendant's home were within his possession and it was not necessary that the tools be found on defendant's person); *Commonwealth v. Segers,* 167 Pa.Super. 642, 76 A.2d 483 (1950) (possession, within statute defining offense of possession of burglary tools, may be joint as well as several).

■ Instantly, an examination of the record reveals the testimony of another associate of the appellant, Luis Rosado, whom the appellant repeatedly solicited to join in the "stick up" of Charles Jenkins and Craig Williams. (N.T. 5/13/93 at 279). Rosado described the scene of the robbery after he agreed to participate in a drug deal that would supposedly take place at the house on North Lawrence Street. The witness stated that his friend, "Heavy D", who had agreed to join in the planned "stick up", was present and was armed with a sawed-off shotgun. Rosado also testified that the appellant's co-defendant, Wilfredo Cintron, was present, secreted in the kitchen of the house, armed with a .357 handgun. Rosado stated that he was carrying a BB gun that appeared to be a real gun. Because the appellant had specifically solicited these men to take part in a "stick up," we may infer that he did not intend that the robbery should take place with the mere threat of possible physical violence. Clearly, the appellant intended that his compatriots in the robbery scheme should be armed with weapons at least as powerful as the weapons with which the drug buyers undoubtedly were armed. Moreover, when "Heavy D" stepped out and ordered Jenkins and Williams to put down their guns, the appellant, in an effort to promote or facilitate the robbery by trapping the buyers in the house, attempted to block the exit.

Furthermore, the appellant may be deemed to have been an accomplice of his co-defendant, Wilfredo Cintron, who has been similarly found guilty of possessing an instrument of crime during the attempted commission of the robbery. Accomplice liability is discussed in pertinent part in the Pennsylvania Crimes Code as follows:

§ 306. *Liability for conduct of another; complicity*

(a) *General rule.*—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) *Conduct of another.*—A person is legally accountable for the conduct of another person when:

\* \* \* \* \* \*

(3) he is an accomplice of such other person in the commission of the offense.

(c) *Accomplice defined.*—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it. . . .

(d) *Culpability of accomplice.*—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S.A. § 306(a)–(d). The applicable law has been summarized by this Court as follows:

"A person is legally accountable for the conduct of another person when he is an accomplice of that person in the commission of [an] offense." *Commonwealth v. Orlowski,* 332 Pa.Super. 600, 616, 481 A.2d 952, 960 (1984). See: 18 Pa.C.S. § 306.

An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey,* 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones,* 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1986). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra* 460 Pa. [316] at 319–320, 333 A.2d [745] at 747 [1975]; *Commonwealth v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers,* 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978).

*Commonwealth v. Brady,* 385 Pa.Super. 279, 284–285, 560 A.2d 802, 805 (1989). However, "[t]he least degree of

concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Graves,* 316 Pa.Super. 484, 489–490, 463 A.2d 467, 470 (1983). See: *Commonwealth v. Coccioletti,* 493 Pa. 103, 109, 425 A.2d 387, 390 (1981).

*Commonwealth v. Calderini,* 416 Pa.Super. 258, 262–63, 611 A.2d 206, 208 (1992), *allocatur denied,* 533 Pa. 656, 625 A.2d 1190 (1993).

Instantly, at trial, Luis Rosado testified that Wilfredo Cintron, the appellant's co-defendant, was armed with a .357 handgun when the incident took place. (N.T. 5/13/93 at 287). In addition, the same witness testified that "Heavy D" was armed with a sawed-off shotgun. (*Id.*).[8] Pennsylvania courts have held that a loaded gun is considered an "instrument of crime." *Commonwealth v. Stanley,* 498 Pa. 326, 335–36, 446 A.2d 583, 587–88 (1982). Under the circumstances of the instant case, we conclude that Cintron's possession of the instrument of crime was not "manifestly appropriate for lawful uses." *Commonwealth v. Correa, supra.* Cintron was seen exiting the house where the incident took place and firing four shots in the direction Jenkins and Williams fled. (N.T. 5/13/93 at 288). Thus, there was abundant evidence to support Cintron's conviction for possession of an instrument of crime. Examining the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the appellant was indeed an accomplice of Cintron, and therefore also guilty through accomplice liability of possessing an instrument of crime.

The appellant next alleges that the second-degree murder conviction cannot be upheld because he had no knowledge that the robbery would take place at the time. The appellant contends that he was only culpable for participating in an illegal drug operation. Because delivery or sale of a controlled substance is not one of the statutorily enumerated felonies upon which a second degree murder conviction can be

8. In fact, the "pumpkin ball-type" projectile which killed Charles Jenkins more than likely came from "Heavy D's" shotgun.

sustained, the appellant concludes that the judgment of sentence should be vacated. We disagree.

As previously stated, we must view all evidence and any reasonable inferences which may be drawn from it in the light most favorable to the Commonwealth. *See Commonwealth v. La, supra; Commonwealth v. Wood, supra.* According to the Pennsylvania Crimes Code, second degree murder is a homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.A. § 2502(b). The definition of perpetration of a felony within the context of Section 2502 is the act of engaging in or being an accomplice in the commission of robbery, rape, deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping. 18 Pa.C.S.A. § 2502(d).

 Although we agree with the appellant in the instant case that delivery or sale of a controlled substance is not one of the felonies enumerated in Section 2502, we recognize that robbery is included in the list of felonies which would permit a second-degree murder charge. A person is guilty of robbery if, in the course of committing a theft, he, among other things, inflicts serious bodily injury upon another or threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a). Pennsylvania courts have ruled that a robbery is committed when the defendant has either inflicted serious bodily injury on another or "physically removed property of another by force." *Commonwealth v. Williams,* 537 Pa. 1, 13, 640 A.2d 1251, 1257 (1994) (quoting *Commonwealth v. Breakiron,* 524 Pa. 282, 297, 571 A.2d 1035, 1042 (1990), *certiorari denied, Breakiron v. Pennsylvania,* 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990)). As stated above, a person is considered an accomplice of another if he solicits another to commit an offense or aids or agrees or attempts to do such in planning or committing the offense. 18 Pa.C.S.A. § 306. *See Commonwealth v. Calderini, supra.* Furthermore, the least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice. *Commonwealth v. Calderini, supra* (citing *Commonwealth v. Graves, supra* ).

450

█ Instantly, it can be gleaned from the testimony and other materials in the record that an attempted robbery took place. One of the appellant's associates, Luis Rosado, testified at trial that he was repeatedly solicited by the appellant to assist in robbing the two potential buyers. (N.T. 5/13/93 at 279). Further, the appellant's own statement as read by Detective Frank Jastrzembski revealed that there was a plan to rob the potential buyers. (N.T. 5/14/93 at 496). In addition, one of the potential buyers was shot and killed during the attempted robbery. Therefore, the necessary elements of robbery are present.

Moreover, it can be inferred from the evidence that the appellant was an accomplice in the robbery. There was testimony that he solicited people to assist in the robbery and attempted to block the exit when the potential buyers tried to escape. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the appellant was an accomplice in the attempted robbery. Because the crime of robbery is included among the felonies listed in 18 Pa.C.S.A. § 2502, and a person was killed during this attempted robbery, we hold that the Commonwealth sustained their burden of proof and that the appellant was properly convicted of second degree murder.

█ Finally, the appellant argues that the evidence established only that he was merely present at the scene. The appellant claims that he had no knowledge that the robbery would take place. Therefore, the appellant maintains, there was insufficient evidence presented by the Commonwealth to support the verdict. Again, we disagree.

The law is clear that a defendant cannot be convicted of a crime where the only evidence to connect him with the crime is "mere presence" at or near the scene. *Commonwealth v. Durah–El*, 344 Pa.Super. 511, 517, 496 A.2d 1222, 1226 (1985); *Commonwealth v. Stores*, 317 Pa.Super. 109, 117–18, 463 A.2d 1108, 1112–13 (1983); *Commonwealth v. Knox*, 273 Pa.Super. 563, 570, 417 A.2d 1192, 1193 (1980). The converse is that something more than "mere presence" at the scene of the crime must be shown to convict one of

the participants in the commission of the crime. *Commonwealth v. Durah–El, supra,* 344 Pa.Super. at 517, 496 A.2d at 1226 (citing *Commonwealth v. Lovette,* 271 Pa.Super. 250, 255, 413 A.2d 390, 392 (1979), *reversed on other grounds,* 498 Pa. 665, 450 A.2d 975 (1982)).

*Commonwealth v. La, supra,* 433 Pa.Super. at 447–48, 640 A.2d at 1344.

▇ The evidence adduced at trial demonstrates that the appellant knew that the robbery would be taking place, in fact, he arranged the entire incident and enlisted the aid of the gunmen. One of the appellant's associates testified that the appellant attempted to solicit him to aid the appellant in "sticking up" two people. (N.T. 5/13/93 at 279). Furthermore, the appellant knew, prior to the return of Charles Jenkins and Craig Williams, that the money would be forcibly taken from the buyers, as evidenced in his statement to the police. (N.T. 5/14/93 at 496). Thus, we conclude that, contrary to the appellant's assertions, the appellant was not merely present and the appellant's role was not that of an innocent bystander.

Based upon the foregoing, we hold that the trial court properly allowed Detective Jastrzembski's testimony, which included the appellant's confession, to be read to the jury at their request during their deliberations. Viewing the evidence in the light most favorable to the Commonwealth, we hold that the Commonwealth presented sufficient evidence to support the appellant's convictions for the crimes of second degree murder and possession of an instrument of crime. Finally, the evidence also demonstrated that the appellant was not "merely present" at the scene but in fact he was quite aware of what was occurring around him and was a willing accomplice, if not the principal. Accordingly, we affirm the appellant's judgment of sentence.

Judgment of sentence affirmed.

CAVANAUGH, J., filed a dissenting opinion.

FORD ELLIOTT, J., joined the majority and filed a concurring statement.

JOHNSON, J., joined in CAVANAUGH, J., dissenting opinion.

FORD ELLIOTT, Judge, concurring.

I join in the majority's resolution of the case. However, as to the PIC conviction, I do so based on the facts of this case and not on a general proposition that accomplice liability is all that is required to convict for possession of an instrument of crime. I can find, as did the majority, that appellant's actions established sufficient control over the use of the weapons in this case. He arranged the robbery and enlisted the gunman for the purpose of utilizing their weapons to forcibly relieve the buyers of their money. I, therefore, agree that appellant constructively possessed the weapons. However, to distinguish, if I were reviewing a PIC conviction for the witness Rosado, under the facts of this case, I would be inclined to join the Dissenting Opinion of my colleague Judge Cavanaugh and decide that mere accomplice liability was not enough.

CAVANAUGH, Judge, dissenting.

Since it may readily be agreed that appellant, Gladden, was properly convicted of second degree murder, the only issue presently considered is whether he was properly convicted of possession of instrument of crime (generally) 18 Pa.C.S.A. 907(a). (PIC (generally))

§ 907. **Possessing instruments of crime**

(a) **Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

This crime, which is part of the chapter of our crimes code defining inchoate crimes, was initially believed by a celebrated minority of this court not to extend to weapons such as the firearms involved in this case. *Commonwealth v. McNear*, 238 Pa.Super. 177, 353 A.2d 39 (1975). *Aff'd,* 478 Pa. 19, 385 A.2d 975 (1978). Although there is a logical and principled

argument that the scheme and interrelationship of Crime Code provisions dealing with firearms and other weapons was formulated to exclude firearms from 907(a) coverage, it is easy to understand why the majority in *McNear* and cases since that time have uniformly held that a firearm is indeed within any reasonable definition of "any instrument of crime" under 18 Pa.C.S.A. 907(a). That issue having been settled, it is also easy to understand why PIC (generally) has become a boiler-plate charge in any case where a completed crime involves usage of a firearm. Quite naturally, in a case involving a homicide, aggravated assault or robbery, the PIC (generally) charge does not become the focus of attention as a trial, sentencing or appeal issue.[1] However, occasionally it does, and in such cases it is well to remember that 907(a) is first and foremost a crime of *possession.* We have held that in order to show possession, the Commonwealth is required to show power of control over the weapon. *Commonwealth v. Carter,* 304 Pa.Super. 142, 450 A.2d 142 (1982) (citing cases). We have also recognized that "possession" may be shown by evidence of constructive possession. *Commonwealth v. Hamm,* 301 Pa.Super. 266, 447 A.2d 960 (1982); *Commonwealth v. Carter, supra; See also, Commonwealth v. Stanley,* 265 Pa.Super. 194, 401 A.2d 1166 (1974) affirmed, 498 Pa. 328, 446 A.2d 583 (1982) (constructive possession proved by evidence of previous actual possession); *Commonwealth v. Nelson,* relied upon by the majority is just such a case. There the constructive possession was based upon the defendant's warning to the robbery victim while his co-actor brandished a gun that he (the victim) should be quiet or "my boy" would take care of him. Our court equated this to an ability to control use of the weapon.[2]

1. Two cases relied upon by the majority demonstrate this subordination of issues. In neither *Commonwealth v. Wilson,* 493 Pa. 332, 426 A.2d 575 (1981) nor *Commonwealth v. Smith,* 490 Pa. 329, 416 A.2d 494 (1980) is there any discussion of the possessory aspect of the weapons charge where more serious charges were at issue.

2. Other cases relied upon by the majority (*Breslin, Dionisio,* and *Seg-ers* ) deal with actual or constructive possession of *burglary tools.* Burglary tools and similar "instruments of crime" are the original

In our case, Gladden was never in possession of a weapon during the course of the criminal episode nor is there any evidence that he exercised any dominion or constructive possession of a weapon in the hands of any cohort. Thus, extension of criminal liability for the possession offense is, by the majority, based on alternative concepts of concert, collusion and, in turn, complicity.[3]

It may seem anomalous that concerted conduct, while sufficient to make one culpable of a murder actually perpetrated by a co-actor, is at the same time insufficient to form the basis for conviction of a lesser weapons offense on a conspiracy theory. Nevertheless, the elements of the separate crimes lead me to conclude that, in a case such as this, conspiracy or complicity in a murder does not necessarily implicate conspiracy to *possess* an instrument of crime. I would hold that, absent evidence of actual or constructive possession, criminal liability for possession of a weapon by one, other than the possessor, may only be based upon evidence that the defendant supplied, procured, or in some way, facilitated the actual possession of the weapon by another. In sum, I believe that theories of conspiracy, accomplice liability or shared intent are irrelevant to a PIC charge unless they relate to the gravamen of the charge—possession of a weapon. There is no such showing in this case.

Consequently, I would reverse and vacate the judgment of sentence for possession of instrument of crime (generally) and I would otherwise affirm.

JOHNSON, J., joins.

intended subject matter of 907(a). See comments, Model Penal Code Comment Sections 5.06 and 5.07 Tentative Draft No. 13.

3. The majority's detailed discussion of accomplice liability fails to disclose how Gladden's conduct implicates him in the act of possessing a weapon held by another. Similarly, the invitation to a cohort to join a "stick-up" can hardly subject one to a charge of possession of a weapon when all the evidence is that the person, in fact, chose *not* to possess a weapon.