OLSZEWSKI, Judge:
On July 10, 1981, Eugenio Correa shot Richard Bradwell in the face. Bradwell miraculously survived the shooting for nine years until his mother, Betty Lahart, found him lying dead on his bedroom floor. Following Bradwell’s death, Correa was charged with voluntary manslaughter and possession of an instrument of crime (PIC). Correa appeals from the *5 judgment of sentence imposed following his conviction on those charges.
Leslie Boyer and Richard Bradwell were married in July of 1980 and separated by February of 1981. Boyer moved into her own apartment, and Bradwell moved back in with his mother. Late in the evening on July 9, 1981, Boyer and her boyfriend, Correa, were making arrangements to go out. Before they had a chance to leave, Bradwell telephoned Boyer several times stating that he wanted to see his daughter. Boyer however told him that it was too late to make arrangements.[1] With every phone call, Bradwell became more menacing, and his speech became slurred. During the third phone call, Bradwell stated that he was coming over after Correa yelled, “Let him come over and take on a real man.” N.T. 10/30/91 at 69. Boyer immediately called Bradwell’s mother to see if she could stop him from leaving the house, but Bradwell’s mother told her that he had already left. Boyer then called the police and made arrangements to take her daughter over to her mother’s house. N.T. 9/30/91 at 61-71.
While Boyer was preparing to leave from her third floor apartment, she heard kicking and banging at the front door to her apartment building. Correa, hearing the noise, went down to greet Bradwell at the front door. Boyer then heard Correa say, “Man, you’re not coming in here, you’re not getting in here,” and Bradwell yelling, “I’ll kill you, man.” N.T. 9/30/91 at 72-7, 75, 118. A short while later, as Boyer was descending the staircase on her way to investigate the scene, she heard a loud bang. She stopped for a minute, and Correa met her. Correa told Boyer that he had shot Bradwell claiming that Bradwell “jumped him.” He also told her to shut up and that everything would be okay. N.T. 9/30/91 at 76. Boyer noticed that Correa had something wrapped in dark cloth under his arm. Correa quickly removed all of his belongings from the apartment and left. As he was leaving, *6 he warned Boyer not to tell anyone what happened. N.T. 9/30/91 at 83-86.
Boyer went downstairs and found her estranged husband lying in a pool of blood. She again called the police. When they arrived, she told them what happened, but she did not give them Correa’s name. Over the next nine years, Correa continued to threaten Boyer to keep her from telling the police that he shot Bradwell. No weapon was found at the scene of the crime, and there was no evidence that the front door was pried open.
Correa chose a bench trial which took place before the Honorable Robert Latrone. At trial, expert witnesses provided conflicting testimony regarding the cause of Bradwell’s death. Correa’s expert witness, Walter Franklin Wrenn III, M.D., opined that Bradwell died from cardiac arrhythmia, unrelated to the gunshot wound. The Commonwealth called Ian Hood, M.D., as its expert witness. Hood observed the autopsy and concluded that Bradwell died from Post Traumatic Seizure Disorder (PTSD) which resulted from the scarring of brain tissue caused by the gunshot wound. Due to the conflicting testimony, the court appointed its own expert witness, Halbert Fillinger, M.D. Dr. Fillinger agreed with Dr. Hood and concluded that Bradwell died from PTSD.[2] Judge Latrone found Correa guilty of voluntary manslaughter and possession of an instrument of crime.
*7 I. CAUSATION
Correa argues that the evidence was insufficient to sustain his conviction of voluntary manslaughter because the Commonwealth failed to prove causation. In reviewing the sufficiency of the evidence, we consider all the evidence presented at trial, and the inferences that can be drawn from it, in a light most favorable to the Commonwealth. Commonwealth v. Rementer, 410 Pa.Super. 9, 17-18, 598 A.2d 1300, 1304 (1991), alloc. denied, 533 Pa. 599, 617 A.2d 1273 (1992). In this case, there was sufficient evidence to allow the fact finder to conclude that the Commonwealth established causation.
We must answer two questions to determine if causation exists: First, was Correa’s conduct “an antecedent but for which the result in question would not have occurred?” 18 Pa.C.S.A. § 303(a)(1). Second, were Correa’s actions a direct and substantial factor in bringing about Bradwell’s death, or was the death so attenuated and remote that it would be unfair to subject Correa to criminal sanctions? Commonwealth v. Paquette, 451 Pa. 250, 253-55, 301 A.2d 837, 839 (1973) .
Here, two expert witnesses testified to a “reasonable degree of medical certainty” that Bradwell died as a result of a seizure related to the gunshot wound to his head, and that the manner of death was homicide. Dr. Hood based his opinion on his review of the autopsy, the medical records from Mercy Catholic Medical Center, the records from Dr. Wrenn’s office, and the toxicology report. He stated that Bradwell died from PTSD related to the original injury to the brain which resulted from a shotgun blast to the head. He concluded that Bradwell’s death was a homicide. N.T. 10/1/91 at 146. He stated that the shotgun blast started a chain of causation that resulted in Bradwell’s death. N.T. 10/1/91 at 158. See Commonwealth v. Skufca, 457 Pa. 124, 132-33, 321 A.2d 889, 894, appeal dismissed, 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974) (mother caused death of her infant children when she locked them in the bedroom and then left the apartment; the children later died of suffocation when a fire broke out); *8 Commonwealth v. Wright, 455 Pa. 480, 486-87, 317 A.2d 271, 274 (1974) (appellant caused victim’s death where she fell from a ledge trying to escape him; she feared he would rape her again).
Dr. Fillinger based his opinion on his examination of the lab reports from the hospital, reports obtained after surgery, records from emergency room visits, a summary of surgical procedures, notes of testimony, and the autopsy report. He stated that the cause of death was post traumatic epilepsy due to a shotgun wound to the head. The manner of death was homicide. N.T. 10/21/91 at 358. He explained that damage to the skull, the dura, depressed skull, and sensitive trauma to the brain tissue all increase the likelihood of a seizure disorder causing death. N.T. 10/21/91 at 359.
While the defense presented conflicting testimony regarding the cause of death, that does not mean that there was insufficient evidence to prove causation. The fact finder is free to believe all, part or none of the evidence. Commonwealth v. Long, 425 Pa.Super. 170, 184-86, 624 A.2d 200, 208, alloc. denied, 535 Pa. 645, 633 A.2d 150 (1993). It was perfectly reasonable for the court to accept the opinion of the two concurring experts and reject that of the other. Furthermore, the opinion of a medical expert expressed in terms of a reasonable degree of medical certainty is sufficient evidence to allow a fact finder to conclude beyond a reasonable doubt that the cause of death was a criminal act. Commonwealth v. Floyd, 499 Pa. 316, 453 A.2d 326 (1982).
Therefore, based on the finding that Bradwell’s death was the result of a seizure occurring as a result of the shotgun blast, we conclude that the shooting was an act but for which Bradwell’s death would not have occurred, and that the shooting was a direct and substantial factor in bringing about Bradwell’s death.
II. JUSTIFICATION
Correa further contends that the Commonwealth failed to prove beyond a reasonable doubt that he was not acting in *9 self-defense or in the defense of others when he shot Bradwell. The Commonwealth can disprove self-defense by establishing at least one of the following: (1) Correa did not reasonably believe that he, or Boyer and her child, were in imminent danger of death or serious bodily harm; or (2) Correa was at fault in provoking or continuing the use of force; or (3) Correa had a duty to retreat and could do so with complete safety. See Commonwealth v. McClain, 402 Pa.Super. 636, 645-46, 587 A.2d 798, 803 (1991). After reviewing the evidence, we conclude that the Commonwealth proved all three and, therefore, the killing was not in self-defense.
Pennsylvania statutory law defines one type of voluntary manslaughter as the killing of another under the unreasonable belief that it is justified. 18 Pa.C.S.A. § 2503(b) (emphasis added). Viewing the evidence in the light most favorable to the Commonwealth, Correa’s belief was unreasonable. Correa left the safety of the third floor apartment with a gun and went down to the first floor to greet Bradwell. He then unlocked the door and let Bradwell into the building. Correa argues that he reasonably believed that he was in imminent danger because of Bradwell’s size, threats, and abusive history. There was no evidence, however, that Bradwell had a gun or any other sort of weapon on his person at the time of the attack. Moreover, if this was the case, then he could have avoided the confrontation simply by refusing to let Bradwell into the building.
In order to determine whether the actor’s belief was reasonable, the trier of fact should employ an objective test. Commonwealth v. Fisher, 342 Pa.Super. 533, 541-42, 493 A.2d 719, 723 (1985). Here, Correa could not have believed that he was in imminent danger from behind a locked door, nor were Boyer and her child who were upstairs in the third floor apartment. The trial court appropriately concluded that a reasonable person would have stayed upstairs, behind two locked doors, and waited for the police to arrive.
The trial court also found that Correa was the initial aggressor. He yelled through the phone at Bradwell to “come *10 on over and take on a real man.” N.T. 10/30/91 at 69. Correa then greeted Bradwell at the front door with a gun. Correa opened the door and let Bradwell into the vestibule, despite Bradwell’s threats to kill him. The evidence supports the court’s finding that Correa provoked and continued the altercation.
Correa, moreover, violated his duty to retreat. Although there is no duty to retreat from one’s dwelling, see 18 Pa.C.S.A. § 505(b)(2)(ii)(A), Correa was not in Boyer’s dwelling, let alone his own. A dwelling is defined as “any building or structure though movable or temporary, or a portion thereof, which is for the time being the home or place of lodging of the actor.” 18 Pa.C.S.A. § 501. Correa was in the vestibule on the first floor behind a locked door. Whether Correa was acting to defend himself, or Boyer and her child, he had a duty to retreat from the vestibule back to the apartment. The vestibule is a common area open to all tenants and their invitees, and retreat should be had if possible. Furthermore, whether the vestibule could be considered a “dwelling” is a moot point because an initial aggressor must always retreat. Commonwealth v. Dinkins, 272 Pa.Super. 387, 391-92, 416 A.2d 94, 96 (1979).
III. PIC
Finally, Correa contends there was insufficient evidence to convict him of possession of an instrument of crime. Three elements must be proven beyond a reasonable doubt: (1) possession of an instrument with the intent to employ it criminally; (2) the instrument is one commonly used for criminal purposes; and (3) possession under circumstances not manifestly appropriate for lawful uses. 18 Pa.C.S.A. § 907. See Commonwealth v. Allen, 466 Pa. 474, 477-79, 353 A.2d 452, 454 (1976). Based on the trial court’s findings, we cannot hold that all of these elements have been met. While it is clear that Correa was in possession of the gun, the evidence is insufficient to prove that he intended to employ it criminally.
*11 Usually, the fact finder is free to infer from the actual occurrence of a crime that the actor possessed the instrument with the intent to employ it criminally. See Commonwealth v. Hall, 304 Pa.Super. 489, 498-94, 450 A.2d 1018, 1020 (1982); Commonwealth v. Gonzalez, 515 Pa. 98, 527 A.2d 106 (1987). In this case, however, the trial court held that Correa was acting under an unreasonable belief that his actions were justified: “Moreover, as a matter of law, because this gun was unjustifiably and unlawfully used with a mistaken and imperfectly acceptable subjective state contradicted by the outward, external, and objective circumstances, the necessary constituent element of intent to employ it criminally was also proven.” Trial court opinion at 24. The court’s holding is contradictory. If Correa honestly believed that he was acting in self-defense, as the trial court holds, then he could not have intended to employ the gun criminally, since acting in self-defense is not a crime.[3]
Correa was convicted by the trial court of voluntary manslaughter based on an unreasonable subjective belief that his actions were justified. The PIC law says that the actor must have the intent to employ the instrument criminally. Therefore, possession of an instrument of crime is a specific intent crime. Accordingly, we now hold that when one is convicted of this type of voluntary manslaughter-imperfect self-defense — the requisite intent needed to convict one of possession of an instrument of a crime is necessarily absent. We therefore vacate the sentence imposed for possession of an instrument of crime.
IV. INEFFECTIVE ASSISTANCE OF COUNSEL
Correa raised these issues on appeal through an ineffective assistance of counsel claim. The test for determining whether counsel was ineffective begins with the inquiry— was the issue of arguable merit? Since we hold that the first *12 two issues do not contain any arguable merit, counsel was not ineffective with regard to those issues. Counsel cannot be ineffective for failing to file a groundless challenge to the sufficiency of the evidence. Commonwealth v. Lee, 401 Pa.Super. 591, 585 A.2d 1084 (1991).
We do however hold that the third issue — counsel’s failure to challenge the sufficiency of the evidence establishing PIC — does have arguable merit. Counsel for Correa did raise the issue in his post-verdict motions, but he did not state in those motions why the evidence was insufficient. The test for ineffective assistance of counsel continues with the following inquiries: (1) did counsel have a reasonable basis for not specifying why the evidence was insufficient, and (2) was the defendant prejudiced by counsel’s inaction? Correa’s counsel obviously had no reasonable basis for not stating in the post-verdict motions why the evidence was insufficient. The law clearly states that “boilerplate” motions will no longer preserve the issue for review. See Commonwealth v. Holmes, 315 Pa.Super. 256, 461 A.2d 1268 (1983). Correa was clearly prejudiced by his counsel’s inaction since we found the evidence to be insufficient to convict him of possession of an instrument of crime. Correa’s counsel was thus ineffective. We therefore vacate the judgment of sentence for PIC.[4]
The judgment of sentence for voluntary manslaughter is affirmed. The judgment of sentence for possession of an instrument of crime is vacated.
McEWEN, J;, concurs in the result.
Concurring Opinion by DEL SOLE, J.

. Boyer procured a Protection from Abuse Order against Bradwell. He was not allowed to come to Boyer’s apartment, and a third party had to transport the child back and forth between the parents.

. In response to my learned colleague’s opinion in concurrence that it was error for the court to call an expert, we note that our Supreme Court has ruled to the contrary:
As a general rule a trial judge may in the exercise of a sound discretion call and examine witnesses of his own accord. In fact, under certain circumstances, it is necessary and imperative for the court to do so. As stated in 9 Wigmore, Evidence § 2484 (3d ed. 1940), "The general judicial power itself, expressly allotted in every State Constitution, implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and question witnesses.”
Commonwealth v. DiPasquale, 424 Pa. 500, 502-05, 230 A.2d 449, 450-451 (1967) (other citations omitted). We feel that the trial court was entirely within its discretion, as fact-finder, to summon a third expert to clarify the cause of death.

. We also question whether Correa could have been found to be using the shotgun under circumstances manifestly inappropriate with regard to any lawful use the instrument may have. If he believed he was acting in self-defense, then he would be using the gun in a lawful manner.

. Although generally the remedy for a successful claim of ineffective assistance of counsel is a new trial, that remedy is not appropriate in this case. The proper remedy for a sufficiency claim is an arrest of judgment, which precludes a retrial on the initial charges. It is this relief to which Correa would have been entitled had his attorney rendered effective assistance as required by the United States and Pennsylvania Constitutions, and it is that remedy which we must grant him here.