## Warren v. Eckert Seamans Cherin & Mellott

C.P. of Allegheny County, no. GD92-0910.

*David J. Manogue* and *Steven A. Haber,* for plaintiffs.
*Timothy S. Coon,* for defendants.

WETTICK, *J.,* April 25, 2000—In this opinion, I address the issue of whether in this civil case that will be tried by a jury I have the authority to appoint (at the parties' expense) an expert who will serve as a judicial tutor and, possibly, as a witness to testify at trial.

This is a legal malpractice case in which plaintiffs seek damages in excess of $12,000,000 because of defendants' alleged failure to obtain a patent of appropriate breadth and scope.

Defendants filed a motion for summary judgment, seeking dismissal of the case on the ground that prior art precluded the issuance of the patent on which plaintiffs' damage claims are based. The evidence that defendants offered in support of the summary judgment included (1) plaintiffs' expert and supplemental expert reports, prepared by Charles N. Quinn, a patent attorney, which generally describe the claims for which a patent would have issued (according to Mr. Quinn) and (2) the prior art that allegedly would have precluded the issuance of any patent generally described in Mr. Quinn's expert reports. The prior art that was submitted included (a) a December 20, 1983 patent issued to Gedeon—which consists of two drawings and more than 20 pages (if double spaced) of a technical description of the invention; (b) a 20-page double-spaced technical description of the Engstrom Erica ventilator; and (c) the Engstrom Erica reference manual (more than 60 double-spaced pages).

In their brief in support of the motion, defendants rely on an expert report of Harry F. Manbeck Jr., a patent attorney, who compares the features of the Gedeon patent and the Engstrom Erica ventilator with his interpretation of the claims described in the Quinn reports and concludes that any patent claims described by Mr. Quinn are not patentable. Plaintiffs' brief in opposition to the motion for summary judgment relies on Mr. Quinn's discussion of the manner in which the claims described in his report were not anticipated or rendered obvious by the Gedeon patent and the Engstrom Erica ventilator.

It would appear that the major dispute is over whether plaintiffs' invention altered existing technology by creating, for the first time, a continuous-flow ventilator that reduces the work of breathing required of a patient on a ventilator (*i.e.,* a ventilator that for the first time combines a constant respirable gas source for spontaneous breathing by the patient and assisted ventilation) or whether this combination (albeit through a different design) was anticipated or rendered obvious by the existing art, including the Gedeon patent and the Engstrom Erica ventilator.

After spending a considerable part of a day reviewing the briefs and other materials submitted in support of and in opposition to the motion for summary judgment, I recognized that I had no understanding of the merits of the parties' positions, and that I was not going to gain a better grasp of the issues by continuing to review what the parties had submitted. I also concluded that a jury would not be able to understand and evaluate this highly technical evidence in a jury trial presided over by a judge who was not in a position to frame the issues or to un-

derstand the evidence sufficiently to make rulings that might narrow or clarify the issues. Consequently, I entered a court order which (1) denied the motion for summary judgment, (2) stated that I would appoint an expert witness to provide testimony as to whether plaintiffs would have obtained a patent for the invention described by Mr. Quinn, assuming that an appropriate patent application had been timely filed, and (3) set up a conference to discuss the selection of the expert witness.

At the conference, plaintiffs' counsel sought reconsideration of the portion of the court order stating that I would appoint an expert witness.[1] Plaintiffs' counsel questioned whether I had the authority to do so and subsequently submitted a brief in support of this position. Defendants favor the appointment of an expert and submitted a brief in support of the position that I have the authority to appoint an expert.

For the reasons set forth in part I of this opinion, initially I am not appointing an expert to offer testimony as a witness because I no longer believe that this, in and of itself, will necessarily produce a fair trial. I now believe that the parties cannot receive a fair trial unless I can develop a better understanding as to what is involved in connection with the issuance of a patent, the manner in which inventions are described, and the technical and engineering concepts involved in this case. Consequently, I will be appointing an expert whose initial responsibilities will be to serve as a judicial tutor. For the reasons set forth in part II of this opinion, I conclude that I have the

---

1. In my prior meetings with counsel, we had never discussed the possibility of a court-appointed expert. Thus, counsel never had any opportunity to address this issue prior to this conference.

authority to appoint an expert to serve initially as a judicial tutor and also, if necessary, as a witness to testify at a trial.

## I.

This case involves issues that are not normally involved in patent litigation.[2] It involves more complicated case management issues that I cannot competently address without a better understanding of the underlying concepts of patent law and the technology relevant to this case. On the basis of the expert reports that the parties have submitted, their characterizations of the other party's expert reports, and their descriptions of what the case entails, I am convinced that I will not develop sufficient sophistication without the assistance of a competent and unbiased expert.

On December 21, 1987, defendants filed the initial patent application. Most of the claims that were submitted through the initial application and subsequent filings with the patent office were rejected (according to plaintiffs) because of an October 1986 sales brochure of Puritan-Bennett which allegedly utilized the device that plaintiffs sought to patent. Plaintiffs allege that if a properly prepared patent application had been filed by September 1986, a patent would have issued that would have covered the Puritan-Bennett device and numerous other devices presently on the market. They allege that defen-

---

2. Normally, patent cases involve issues of patent construction, validity, and alleged infringement.

dants were negligent for not filing a patent application covering plaintiffs' device by September 30, 1986.[3]

Defendants defend this claim on the grounds that (1) plaintiffs—rather than defendants—were responsible for the delay in the filing of the application, (2) plaintiffs failed to notify defendants of the Puritan-Bennett brochure, and (3) even if a patent application had been filed by September 30, 1986, the patent would not have issued because the device that plaintiffs sought to patent was anticipated or rendered obvious by prior art and was, therefore, not patentable. Defendants refer to a 1983 patent (Gedeon patent) and a prior state of the art respirator sold in the United States in 1984 (Engstrom Erica ventilator).

If this case involved only a claim that plaintiffs were damaged because of defendants' failure to file prior to October 1986 the patent application that it actually filed, the case would involve only the following issues: (1) did defendants fail to exercise reasonable care because of the failure to file the patent application on or before September 30, 1986; (2) would the patent described in the application have issued (*i.e.,* whether or not the device that plaintiffs sought to patent was barred by the prior state of the art which defendants describe); and (3) if a patent for the device that plaintiffs sought to patent had been issued, what would have been the value of this patent?

---

3. Plaintiffs state that the dissemination of the October 1986 brochure precluded the issuance of patents for foreign markets. However, according to plaintiffs, a patent would have issued for the USA market if a proper application had been filed within one year of the October 1986 dissemination of the Puritan-Bennett brochure.

However, the case is far more complicated because of plaintiffs' second major negligence allegation. Plaintiffs state that a patent covering plaintiffs' invention would not have been issued on the basis of the patent application that defendants filed because the patent claims described in the application were so broad that they included prior art, and because the application failed to cover the primary inventive features of plaintiffs' device. Plaintiffs, in other words, contend that defendants never understood the invention to be patented as described by plaintiffs to defendants.

Thus, this case involves a hypothetical patent application and a hypothetical patent covering an invention that plaintiffs contend they invented. In his initial expert report, Mr. Quinn describes 17 claims for which patent protection should have been obtained. In their supplement to expert report, plaintiffs attach claims identified as "A" and "B" which they describe as follows: "amended versions of claims 1 and 7 as set forth in the expert report, broadly claiming the core concept invented by Drs. Warren and Fromm. These claims are exemplary of broad claims which should have been included in or added to any patent application which should have been filed in a timely manner for Drs. Warren and Fromm, from which a patent of comparable scope would have issued." Claims A and B are attached to this opinion as attachment 1.

Defendants contend that Mr. Quinn's descriptions of the hypothetical application and hypothetical patent are so general that I should not permit the case to proceed because these descriptions do not come close to meeting the specificity required of a patent application. Defendants contend that I should strike Mr. Quinn's supple-

mental expert report because it raises new claims rather than describing in more detail claims 1 and 7 of his initial expert report. Defendants also contend that throughout the litigation, they will be presented with a "removing target" as to plaintiffs' invention; the testimony that will be offered will never be sufficiently specific for a fair resolution of what patent, if any, would have issued.

There are two other issues that may arise. Issue 1: Plaintiffs do not describe the patent application that should have been filed. Thus, assuming that the jury finds defendants should have filed by September 30, 1986 an application different from the application that they actually filed, it is unclear how to have the jury describe the specific application that, according to the jury, should have been filed. I do not know how the parties can address the issue of what patent, if any, would have issued without knowledge of the jury's finding as to the specific application that should have been filed.

Issue 2: Plaintiffs do not describe the patent that should have been obtained. Thus, assuming that the jury finds that a broader patent would have issued if a proper application had been filed, it is unclear how to have the jury describe the specific patent that, according to the jury, would have issued.[4] I do not know how the parties can address the issue of the value of this patent without knowing the specific patent that would have issued.

While I can describe certain issues that may be involved in this case, I cannot competently perform my responsibilities as a trial judge unless I am assisted by a

---

4. In this case, apparently plaintiffs could have obtained a patent for aspects of plaintiffs' invention that, according to plaintiffs, have no commercial value.

neutral and competent expert. I have been a trial judge in complicated cases in which all counsel framed the factual and legal issues in the same fashion. Consequently, with this assistance from counsel, it was easy to identify and understand the matters for which rulings were needed. In this case, however, counsel's views of the evidence, the issues, and the law are very divergent.[5] There is no agreed upon framework that provides a structure to this dispute. I have not been able, on my own, to develop a framework. Thus, I am not in a position to address adequately the requests and arguments of counsel.

## II.

The next issue that I address is whether I have the inherent power to appoint an expert witness in a civil case in which a jury trial is sought. There are no Pennsylvania Rules of Civil Procedure or Rules of Evidence that address this issue. Pennsylvania case law provides almost no direction.

Pa.R.E. 706 governs court-appointed experts. It reads as follows:

"Rule 706. Court-appointed experts

"Where the court has appointed an expert witness, the witness appointed shall advise the parties of the witness' findings, if any. The witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party call-

---

5. This description is not intended to be a criticism of counsel. The role of an attorney is to frame the factual and legal issues in a manner that is most favorable to that attorney's client.

ing the witness. In civil cases, the witness' deposition may be taken by any party.

"Comment—1998

"Pa.R.E. 706 differs from Fed.R.E. 706. Unlike the federal rule, Pa.R.E. 706 does not affect the scope of the trial court's power to appoint experts. Pa.R.E. 706 provides only the procedures for obtaining the testimony of experts after the court has appointed them.

"Pennsylvania law provides for the appointment of experts in some instances. See 23 Pa.C.S. §5104 (disputed paternity proceeding); Pa.R.C.P. 1515 and 1530(e) (in equity proceedings, court may appoint accountants and auditors as experts). In *Commonwealth v. Correa,* 437 Pa. Super. 1, 648 A.2d 1199 (1994), the Superior Court held that the trial court had inherent power to appoint an expert.

"See also, Pa.R.E. 614 (Calling and interrogation of witnesses by court)."

As the comment to Pa.R.E. 706 states, Federal Rule of Evidence 706 permits a court to appoint an expert. This rule reads as follows:

"Rule 706. Court-appointed experts

"*(a) Appointment.* The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the

clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

"*(b) Compensation.* Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow. The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the Fifth Amendment. In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

"*(c) Disclosure of appointment.* In the exercise of its discretion, the court may authorize disclosure to the jury of the fact that the court appointed the expert witness.

"*(d) Parties' experts of own selection.* Nothing in this rule limits the parties in calling expert witnesses of their own selection."

Prior to the adoption of Federal Rule 706, federal case law had recognized the inherent power of a court to appoint an expert. See 4 *Weinstein's Federal Evidence* §706 App. 100 (Joseph M. McLaughlin ed., 2d ed. 1998) ("The court's right to appoint expert witnesses is an inherent power that it would have even in the absence of Rule 706."). Also see *id.* at section 706 App. 01[2]:

"The inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned. *Scott*

*v. Spanjer Bros. Inc.,* 298 F.2d 928 (2d Cir. 1962); *Danville Tobacco Associates v. Bryant-Buckner Associates Inc.,* 333 F.2d 202 (4th Cir. 1964); Sink, The Unused Power of a Federal Judge to Call His Own Expert Witnesses, 29 S. Cal.L.Rev. 195 (1956); 2 Wigmore §563, 9 *id.* §2484; Annot., 95 A.L.R.2d 383. Hence the problem becomes largely one of detail."

See Christopher B. Mueller & Laird C. Kirkpatrick, 3 *Federal Evidence* §367 (2d ed. 1994) (footnote omitted) ("Commentators and decisional authority generally agree that courts have inherent authority to appoint expert witnesses and Fed.R.E. 706 codifies this authority, prescribing in some detail the procedure to be followed and limits to be observed.").

See annotation, *Trial court's appointment, in civil case, of expert witness,* 95 A.L.R.2d 383, 392 (1964) ("No case has been discovered in which it was held that a court does not have the power and right to select an impartial expert witness, and to appoint him, either on the court's motion or that of one of the parties; in two instances, it was indicated that a trial judge may sometimes have the duty to make such an appointment.").

Federal Rule 706 covers only court-appointed witnesses. The rule does not embrace expert advisors or consultants. A trial judge has the inherent authority to appoint technical advisors with specialized skills to assist the trial judge in performing his or her responsibilities. *Reilly v. United States,* 863 F.2d 149, 158 (1st Cir. 1988) ("[T]he advisor's role is to act as a sounding board for the judge—helping the jurist to educate himself in the jargon and theory disclosed by the testimony and to think through the critical technical problems.").

The issue of the appointment of technical advisors to aid the court was addressed in note, *Improving Judicial Gatekeeping: Technical Advisors and Scientific Evidence,* 110 Harvard L.Rev. 941 (1997). The writer of the note recognized that Rule 706 refers only to the appointment of expert witnesses and that the court's inherent authority is not so limited—courts have the authority to appoint experts to the more informal role of "technical advisor" to the court. The appointed advisor is only an advisor if he or she does not contribute to the evidence. The note states:

"However, because many courts have sought to use Rule 706 experts in a flexible manner, the distinction between a witness appointed under Rule 706 and a technical advisor appointed under the court's inherent authority is not always clear. Judges who appoint Rule 706 experts to help resolve complicated scientific and technical questions may interact with and assign duties to these experts in ways that are inconsistent with traditional notions of a witness. Rule 706 experts have, in practice, performed a variety of tasks ranging from aiding in the resolution of an isolated, discrete factual question that requires scientific expertise to critiquing the existing legal framework in an area of law and ultimately persuading the court to adopt a new approach. Moreover, some courts that have appointed experts under Rule 706 have not strictly enforced the procedural protections enumerated in the rule when the protections seemed inconsistent with the expert's actual role." *Id.* at 948. (footnotes omitted)

The American Bar Association's section of litigation, *Civil Trial Practice Standards,* Standard 11 (February

1998) (Attachment 2) addresses the subject of court-appointed experts. The comment to Standard 11 recognizes that:

"Trial judges have inherent authority to appoint experts as technical advisors to assist the court. See *e.g., Reilly v. United States,* 863 F.2d 149, 156-57 (1st Cir. 1988); note, *Improving Judicial Gatekeeping: Technical Advisors and Scientific Evidence,* 110 Harvard L.Rev. 941, 949-51 (1997). They may also appoint expert witnesses for testimonial purposes under Federal Rule of Evidence 706(c) and similar provisions in force in most states. 2 Joseph & Saltzburg, Evidence in America: The Federal Rules in the States §§55.2, 55.3 (Supp. 1994). This standard applies to experts appointed in either capacity."

Standard 11 suggests that a court should, where feasible, limit the role of the court-appointed expert to serving as a judicial tutor:

"*(11) Court-appointed experts.* The court may appoint an expert to serve as a judicial tutor as to esoteric subject matter or, in exceptional cases, as a witness to testify at a trial. The same expert may serve in both capacities."

Also, the comment to this standard recognizes that a court-appointed expert who will testify may be only providing the jury with background information or may be offering an opinion on disputed technical issues. There would appear to be other roles for a court-appointed expert such as offering testimony that describes where the testimony of the expert witnesses of the parties can be reconciled and where the testimony differs, with a summary of the differences (*i.e.,* assisting the jury in analyzing complicated expert testimony).

## III.

For the reasons set forth in part I of this opinion, I will appoint an expert to serve as a judicial tutor and, possibly, as a witness to testify at trial. I will generally follow Standard 11 of the *Civil Trial Practice Standards* governing court-appointed experts. The parties will assist me in identifying the expert whom I will appoint, and in initially defining the expert's duties with the understanding that the expert will assist in modifying the scope of these duties throughout the litigation.[6]

I wish to emphasize that the expert is not being appointed for the purpose of assuming any of my responsibilities as the trial judge. To the contrary, he or she is being appointed in order that I can better fulfill my obligations as a trial judge.[7]

## ORDER

On April 25, 2000, a status conference will be held on May 11, 2000 at 1:30 p.m. o'clock to discuss the appointment of a court-appointed expert.

---

6. Initially, each party will deposit funds to pay for one-half of the expert's fees. I will request the parties to brief the issue of whether these expenses are taxable as costs or whether they should be paid in some other fashion.

Since this case involves a $12,000,000 claim, I need not decide whether an expert may be appointed where the expert fees will be substantial in relationship to the amount of the claim.

7. Standard 11(c) states that the court will ensure that every party is aware of all communications pertaining to the merits between the court and a court-appointed expert. This procedure should prevent a trial judge from turning over control of the case to the court-appointed expert. While I will follow Standard 11(c), I am not suggesting that the law requires a trial judge to do so for communications that do not involve testimony that the expert will offer at trial.

## EXHIBIT A

*Attachment 1*

(A) A method for ventilating a patient comprising:

(1) providing a supply of respirable gas at pressure at least equal to atmospheric;

(2) providing a conduit connection between an airway of said patient and said respirable gas supply thereby permitting said patient to inhale said respirable gas when desired; and

(3) augmenting respirable gas in said conduit responsively to sensed flow of gas within said conduit resulting from patient inspiratory effort.

(B) Apparatus for ventilating a patient comprising:

(1) means for supplying respirable gas at pressure at least equal to atmospheric;

(2) a conduit connection between an airway of said patient and said respirable gas supply means permitting said patient to inhale said respirable gas when desired; and

(3) means for augmenting respirable gas in said conduit responsively to sensed flow of gas within said conduit resulting from patient inspiratory effort.

---

*Attachment 2*

Civil Trial Practice Standards

*(11) Court-appointed experts.* The court may appoint an expert to serve as a judicial tutor as to esoteric subject

matter or, in exceptional cases, as a witness to testify at a trial. The same expert may serve in both capacities.

*(a) Selection.*

(i) The court should invite the parties to recommend jointly an expert to be appointed by the court.

(ii) If the parties cannot agree, the court should invite them to submit names of a specified number of experts with a summary of their qualifications and an explanation of the manner in which those qualifications "fit" the issues in the case.

(iii) The court may choose one or more experts recommended by each party; it may choose one or more experts from those recommended by any of the parties; or it may reject the experts recommended by the parties and select an expert unilaterally.

(iv) Before selecting an expert, the court should:

(A) Consider seeking recommendations from a relevant professional organization or entity that is responsible for setting standards or evaluating qualifications of persons who have expertise in the relevant area, or from the academic community, and

(B) Afford the parties an opportunity to object to the appointee on the basis of bias, qualifications or experience.

*(b) Scope of expert's duties.* The court should afford the parties the opportunity to participate in defining the scope of the expert's duties.

*(c) Communications between court and expert.* The court should ensure that the parties are aware of all communications pertaining to the merits between the court and a court-appointed expert by:

(i) Permitting the parties to be present when the court meets or speaks with the expert;

(ii) Providing that all communications between court and expert will be in writing with copies to the parties; or

(iii) Recording oral communications between court and expert and making a transcript or copy of the recording available to the parties.

*(d) Communications between parties and expert.* The court should ensure that every party is:

(i) Informed of, and afforded the opportunity to explore, in advance of trial, the findings and opinions of any court-appointed expert; and

(ii) Aware of all communications between any party and a court appointed expert by:

(A) Permitting all parties to be present when any party meets or speaks with the expert, or

(B) Providing that all communications between any party and the expert will be in writing with copies to all parties.

*(e) Testimony at trial.* If an expert witness appointed by the court testifies at trial:

*(i) Questioning.* The court ordinarily should not call and question the witness. The witness should be examined by counsel in an order determined by the court.

*(ii) No identification as court appointee.* The witness should not ordinarily be identified as one appointed by the court.

*(iii) If identified as court appointee.* If the court determines that, in the circumstances, it is appropriate to identify the witness as a court appointee, the court should instruct the jury that:

(A) It is not to give greater weight to the testimony of a court-appointed expert than any other witness simply because the court chose the expert;

(B) The jury may consider the fact that the witness is not retained by either party in evaluating the witness's opinion; and

(C) The jury should carefully assess the nature of, and basis for, each witness's opinion.

## Comment

Trial judges have inherent authority to appoint experts as technical advisors to assist the court. See *e.g., Reilly v. United States,* 863 F.2d 149, 156-57 (1st Cir. 1988); note, *Improving Judicial Gatekeeping: Technical Advisors and Scientific Evidence,* 110 Harvard L.Rev. 941, 949-51 (1997). They may also appoint expert witnesses for testimonial purposes under Federal Rule of Evidence 706(c) and similar provisions in force in most states. 2 Joseph & Saltzburg, Evidence in America: The Federal Rules in the States §§55.2, 55.3 (Supp. 1994). This standard applies to experts appointed in either capacity.

Courts should be reluctant to have court-appointed experts testify in jury trials. Identification of an expert with the court may artificially enhance that expert's status and confer a false aura of authority and credibility.[5] It may be difficult for a jury to understand why a court-

---

5. In European countries in which judges decide civil cases to the exclusion of juries, court-appointed experts are not uncommon and, according to a noted comparative law scholar, "[t]he fear is spreading that courts are covertly delegating decision-making powers to an outsider without political legitimacy. . . . Regularly subjected to dueling experts, adjudicators need not surrender to the authority of science as blindly as those confronted with a single opinion of their chosen expert: they can decide whom to believe by engaging their ordinary judgments of witness[es]' credibility." Damaska, Evidence Law Adrift 151-52 (1997).

appointed expert was retained and how the expert is being compensated. The process through which a court-appointed expert arrives at an opinion is often one from which counsel have been excluded. The result may be that neither counsel is comfortable with the approach the expert has taken.

A court-appointed expert may aid both in decision-making and in settlement. Among the myriad services such an expert may provide are: to advise the court on technical issues, to provide the jury with background information, or to offer an opinion on disputed technical issues. The appointment of experts by the court is rare, among other reasons, because of: (1) the cost involved; (2) the difficulty of finding truly neutral experts; (3) the concern that testimony from a court-appointed expert— if the fact of court appointment is disclosed to the jury[6]— may be perceived as the court taking sides in the controversy; (4) the potential delay involved; and (5) the recurring problem that, by the time the need is known, the appointment may entail significant delay in the proceedings. See generally, Federal Judicial Center Manual for Complex Litigation 3d §21.51 (1995); Cecil & Willging, Court-Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706 (Federal Judicial Center 1993) ("Cecil & Willging, Court-Appointed Experts").

The court is not free to engage in substantive ex parte discussion with court-appointed experts on the merits of the case. Canon 3A(4) of the Code of Conduct for United States Judges, for example, provides: "A judge

---

6. It need not be, under Fed.R.E. 706(c) and analogous state provisions.

should . . . except as authorized by law, neither initiate nor consider ex parte communications on the merits, or procedures affecting the merits, of a pending or impending proceeding." Subdivision (c) of this standard is designed to afford the court the latitude it needs to communicate with the court-appointed expert while preserving the parties' rights to be fully apprised of discussions between judge and expert pertaining to the merits.

The procedures suggested in this standard are drawn from a variety of sources, including the *Reilly* case; the Federal Judicial Center's Manual for Complex Litigation 3d §21.51; Cecil & Willging, Court-Appointed Experts; and Cecil & Willging, Court-Appointed Experts, in Federal Judicial Center, Reference Manual on Scientific Evidence 525-71 (1994); American Bar Association Section of Litigation, National Center for State Courts & State Justice Institute, Jury Trial Innovations §IV-4 (Munsterman et al. eds. 1997). See also, note, *Improving Judicial Gatekeeping: Technical Advisors and Scientific Evidence,* 110 Harvard L.Rev. 941, 954-58 (1997).

Most evidence codes permit the trial court, in its discretion, to disclose the fact of the appointment of the expert witness by the court. See *e.g.,* Fed.R.E. 706(c); Cal. Evid. Code §722(a); and the numerous state evidence codes modeled on the federal rules. Joseph & Saltzburg, Evidence in America: The Federal Rules in the States at sections 55.2, 55.3. However, this standard reflects the view—borne out by Federal Judicial Center research—that, if the expert's court-appointed status is disclosed, "concern about undue influence [on the jury] seems reasonable." Cecil & Willging, Court-Appointed Experts at 51.

The court may prohibit ex parte communications between the parties and a court-appointed expert. This may be impractical where, for example, the expert needs to contact one or more parties for specimens to examine. Subdivision (d)(ii) is operative only if the court has not prohibited such contact. Subdivision (d)(i) contemplates that if the court-appointed expert is to testify at trial, the expert will be subject to the same type and degree of discovery (*e.g.,* deposition, disclosure, interrogatories) as a party-proffered expert.