J-S39027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALVIN BANKS | |
| Appellant | No. 2976 EDA 2014 |

Appeal from the Judgment of Sentence May 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006388-2012

BEFORE:  BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                        **FILED AUGUST 21, 2015**

Alvin Banks appeals the judgment of sentence imposed on May 1, 2014, in the Court of Common Pleas of Philadelphia County. A jury convicted Banks of two counts of robbery, conspiracy, and possessing an instrument of crime.[1] The trial court sentenced him to an aggregate term of ten to thirty years' incarceration. In this appeal, Banks challenges the sufficiency and weight of the evidence presented by the Commonwealth to identify him as the gunman. Based on the submissions by the parties, certified record, and relevant law, we affirm.

The trial court set forth the relevant factual history as follows:

On May 12, 2012, at around 10:30 p.m., Lacey Walerski, one of the complainants, walked to the Copper Clover, a neighborhood

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 903, and 907(a), respectively.

bar in Port Richmond. There, Ms. Walerski met her boyfriend, John Buettler, and they left together shortly thereafter. As the pair was walking home, they stopped at the corner of Agate Street and Allegheny Avenue, a well-lighted place across the street from Northeastern Hospital. As Ms. Walerski was saying goodnight to Mr. Buettler, an old, red pick-up truck equipped with a ladder rack drove up and stopped nearby. [Banks] approached with a gun, placed it to Ms. Walerski's head, and forced her and her companion to the ground. Ms. Walerski noticed that [Banks] had a distinctive limp as he walked. [Banks] demanded that she "give up all [her] shit". He took her earrings, cellular telephone, and handbag. [Banks] then pointed the gun at Mr. Buettler's head, threatened to kill him, and demanded his belongings. [Banks] stole Mr. Buettler's wallet, cellular telephone, and sneakers. [Banks] ordered Ms. Walerski and Mr. Buettler to count to 100 and not look at him. As [Banks] approached the truck, Ms. Walerski noticed another man standing next to the driver's side door. The two men entered the truck and drove away.

After the assailants fled, Ms. Walerski and Mr. Buettler ran into Allegheny Avenue and flagged down a police cruiser. Ms. Walerski was visibly shaken and told the officers the details of the robbery, including a description of the truck and attackers. Ms. Walerski and Mr. Buettler were driven to the police station, and eventually were taken to another location where they positively identified [Banks] and the driver, later identified as Tracey Marrow (a.k.a. Yusef Johnson)

At 11:45 p.m. on May 12, 2012, Philadelphia Police Officer Michael Szelagowski was on routine patrol when he received a report of a robbery nearby. Moments later, Officer Szelagowski observed Ms. Walerski and Mr. Buettler screaming for help. Ms. Walerski was "petrified, shaking, [and] very nervous." Mr. Buettler was coherent, and did not appear intoxicated.

Police Officer Danny Wright was also on patrol that evening when he received a report of a gun-point robbery where the assailants had fled in a red truck with ladder racks. Approximately thirty to forty minutes after the report, Officer Wright observed a red truck disregard a stop sign. Officer Wright activated his cruiser's lights and siren, but the suspect vehicle did not stop for two blocks. As the truck pulled over, the passenger alighted and fled on foot. Officer Wright arrested the driver, who was subsequently identified as [Banks]. The

passenger, Marrow, was later arrested by Officer William Nagy and a 9 millimeter-styled BB gun was recovered. During Officer Nagy's pursuit of the [sic] Marrow, the suspect did not have a limp. Officers also recovered Ms. Walerski's and Mr. Buettler's personal items from [Banks], the red truck, and Marrow.

Detective James Weiss headed the robbery investigation. He interviewed both Ms. Walerski and Mr. Buettler, the officers involved, and prepared the arrest report for [Banks]. In the report when describing the post-incident identification of the assailants, Detective Weiss testified that he transposed the names of the suspects. The report incorrectly indicated Marrow was the perpetrator of the robbery, while [Banks] was the getaway driver. This transposition was contrary to the witnesses' statements and the testimony at trial, and was merely a scrivener's error.

Finally, Police Officer Eric Pross testified that he was at the courthouse for another matter during [Banks'] trial. Officer Pross observed [Banks] in the hallway outside the courtroom for approximately twenty minutes and testified that [Banks] had an "obvious" limp.

Trial Court Opinion, 02/24/2015 at 2-4 (citations and footnotes omitted).

Following a three-day trial, Banks was found guilty as stated above. *See* N.T. 2/28/14 at 13. Following sentencing, Banks filed a timely post-sentence motion, which was denied by operation of law on September 3, 2014. This appeal followed.[2]

Banks' first challenge is to the sufficiency of the evidence. Our standard of review of the sufficiency of the evidence is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

_____

[2] Banks timely complied with the trial court's order to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt … the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received to be considered, the finder of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

**Commonwealth v. LaBenne**, 21 A.3d 1287, 1289 (Pa. Super. 2011). "[I]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crime[s]." **Commonwealth v. Brooks**, 7 A.3d 852 (Pa. Super. 2010).

Banks first challenges the sufficiency of the identification evidence to prove he was the gunman in the incident in question.[3]  Specifically, Banks argues the verdict "was inherently unreliable and could amount to no more than surmise or conjecture."  Banks' Brief at 10.

In support of his argument, Banks claims that the eyewitnesses who identified him as the gunman indicated that the gunman on the night in question "was sitting in the park - an obvious reference to Marrow." **Id.** at 11.  Banks states this identification is reflected in the contemporaneous arrest report by Detective Weiss.  Banks argues since "Marrow was in

---

[3] Banks does not challenge the sufficiency of the evidence with regard to any of the elements of the crimes of which he was convicted by the jury.

possession of the BB gun used in the crime and the proceeds of the crime [and] Walerski's purse was on the passenger side of the dashboard where Marrow had been sitting before fleeing the vehicle," the evidence "inevitably pointed to Marrow as the gunman." *Id.* Banks maintains that "at no time did the complainants indicate that the driver[4] had played a role in the crime." *Id.* We find no merit in these arguments.

Here, there was direct evidence identifying Banks as the gunman. *See* N.T. 2/26/2014 at 33, 46-48, 74. Both Walerski and Buettler identified Banks as the gunman at trial. This testimony, by itself, was sufficient to sustain Banks' convictions. *See Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014), citing *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) (positive identification by one witness is sufficient for conviction).[5]

---

[4] Walerski and Buettler testified that they saw another individual with Banks, who was standing by the driver's side of the truck, during the course of the robbery. That individual was later identified as Marrow. The victims testified Banks fled in the passenger seat. *See* N.T. 2/26/2014, at 42, 44, 69 & 77.

[5] Banks' reliance on the Pennsylvania Supreme Court's decision in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), is misplaced. In *Karkaria*, the Court concluded that the testimony of 14-year-old alleged sexual assault victim was "riddled with critical inconsistencies." *Karkaria*, *supra*, at 1171. The victim insisted that the assaults occurred only when her stepbrother babysat her, but she admitted that he no longer did so during the dates in the indictment. *Id.* No additional evidence corroborated her account. *Id.* at 1168. Conversely, the testimony of both victims consistently identified Banks as the gunman and placed him at the scene of the robbery.

Additionally, Walerski and Buettler identified Banks at the scene. Banks wore the same white t-shirt noticed by Walerski at the time of the robbery. *See id.* at 39-40, 48. Further, Walerski identified Banks by his distinctive walk. Walerski testified that when she saw Banks approaching her, she had noticed his walk and commented to Buettler "Doesn't he look like Mike?" *Id.* at 33. Before positively identifying Banks, Walerski asked police to see Banks walk, to which he complied. *Id.* at 46. Walerski testified she asked to see Banks walk "[b]ecause of the way he walked when I saw him on Allegheny Avenue." *Id.* at 46-47. At trial, a police officer also testified he observed Banks walking with a limp in the hallway of the courthouse. *Id.* at 154.

While the arrest report reflects Marrow was the gunman, Detective Weiss, who prepared the report, testified that in the report he accidentally "switched Alvin Banks and [Marrow] for where they were when the original incident happened." *See* N.T., 2/26/2014, at 139.[6] Further, in arguing that Marrow was found with the BB gun, and that the proceeds of the robbery were found on the passenger side of the truck where Marrow had been seated, Banks focuses on the evidence "viewed in a light most favorable to himself." *See Commonwealth v. Emler*, 903 A.2d 1273, 1277 (Pa. Super. 2006). However, as stated above, we must view the evidence in a light

---

[6] Weiss reiterated during cross-examination that he "mixed the two people up." *Id.* at 146.

most favorable to the verdict winner. **LaBenne, supra**, at 1289. Walerski identified the BB gun as the one Banks used to rob them. N.T., 2/26/2014, at 35. Moreover, Banks' argument regarding the location of the stolen items on the passenger side ignores the eyewitnesses' testimony that they saw Banks flee from the robbery scene in the passenger seat of the truck. The victims' identification of Banks as the gunman was sufficient evidence to establish Banks' role in the robbery. Accordingly, Banks' sufficiency claim fails.[7]

Banks' second issue challenges the weight of the evidence. Specifically, Banks argues, "the jury's verdict [is] against the weight of the evidence since the testimony of all Commonwealth witnesses was fraught with inconsistencies as to the identity of the gunman in the incident in question." Banks' Brief at 3. Banks states that the Commonwealth's case relied "almost entirely on the eyewitness testimony [and] … was contradicted by the complainants' own admission that they had identified the gunman in the park as well as every piece of physical evidence[.]" **Id.** at 12.

---

[7] Even if Banks was not the gunman, under 18 Pa.C.S. § 306(a) "a person is guilty of an offense if it is committed by his own conduct or by the conduct of [an accomplice]." **See Commonwealth v. Calderini**, 611 A.2d 206, 208 (Pa. Super. 1992); **see also Commonwealth v. Gladden**, 665 A.2d 1201, 1208 (Pa. Super. 1995). Here, Banks was an active participant in the robbery, and would be culpable based upon the conduct of Marrow. **See** N.T. 2/27/2014 at 68-70 (jury was instructed on accomplice liability).

Pursuant to Rule 607(a), an appellant must preserve the underlying issue before the trial court in order to prevail on a weight of the evidence claim. **_See Commonwealth v. Ferguson_**, 866 A.2d 403, 409 (Pa. Super. 2004). "The purpose of this rule is to make clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **_Id._** (citing Pennsylvania Rules of Criminal Procedure 607). Here, Banks filed a post-sentence motion contesting the weight of the evidence on May 1, 2014. Therefore, we may review this claim.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **_Commonwealth v. Widmer_**, 744 A.2d 745, 751-752 (Pa. 2000). A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **_Commonwealth v. Lyons_**, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted), _cert. denied_, 134 S. Ct. 1792 (U.S. 2014).

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when review a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the

evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

Accordingly, as we review Banks' claim, we are mindful that we are not passing on the underlying question of whether the verdicts were against the weight of the evidence, but rather we are considering whether the trial court abused its discretion in denying Banks' motion for a new trial based upon his claim that the verdict was against the weight of the evidence.

Here, the trial court, sitting as fact finder, addressed Banks' weight claim stating:

[T]he evidence presented at trial was sufficient to support a conviction for [robbery], conspiracy, and possessing an instrument of crime. With that analysis in mind, one must consider whether the verdict in this case shocks one's sense of justice or represents an abuse of discretion. Given the strength and consistency of the testimony presented by the

Commonwealth's witnesses, it does neither. The evidence, found credible by both the jury and this court, was clearly presented and showed that [Banks] held a gun to both Ms. Walerski and Mr. Buettler, threatened them, and forced them to surrender their personal items. Further both [Banks] and Marrow were located a short time later in a vehicle matching the description given by the complainants with the proceeds of the crime. Additionally, Ms. Walerski's testimony identifying her lame assailant as [Banks] was consistent throughout, and Officer Pross'stestimony confirmed that [Banks] indeed walked with a pronounced limp. The jury had the opportunity to observe any claimed inconsistencies in the witnesses' testimony and was able to take this into account when deliberating. The fact that [Banks] was found guilty after all the evidence was presented was not contrary to the evidence or shocking to the conscience.

*See* Trial Court Opinion, 2/24/2015, at 8 (citation omitted).

In rejecting Banks' weight claim, the trial court carefully reviewed the evidence presented to the jury, and explained why the verdict did not shock one's conscience. We discern no abuse of discretion. Accordingly, we affirm.

Judgment of sentenced affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015

- 10 -