J-A19006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
         :                  PENNSYLVANIA
         :
        v.                   :
         :
         :
RAHEEM GLADNEY          :
         :
        Appellant        :    No. 2270 EDA 2022

Appeal from the Judgment of Sentence Entered May 12, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002262-2021

BEFORE:   BOWES, J., STABILE, J., and PELLEGRINI, J.<sup>*</sup>

MEMORANDUM BY BOWES, J.:          **FILED SEPTEMBER 29, 2023**

Raheem Gladney appeals from the judgment of sentence of two years
of probation imposed on his convictions for theft by unlawful taking, receiving
stolen property, simple assault, and recklessly endangering another person.
We affirm.

This matter involves a dispute between neighbors. We set forth the
relevant testimony presented at Appellant's bench trial from the trial court's
opinion:

> At trial, the Commonwealth presented the testimony of the
> complainant, Damian Paige ("Mr. Paige"). Mr. Paige testified that,
> on January 5, 2021, at approximately 4:53 p.m., he was returning
> home from running errands at Office Depot. At this time, he saw
> a red SUV "flying down the street" and recognized [Appellant]
> getting out of the vehicle. Mr. Paige continued walking toward his
> front steps, at which time [Appellant] rushed over to him, spat in
> his face[,] and placed him in a headlock. Mr. Paige managed to

---

<sup>*</sup> Retired Senior Judge assigned to the Superior Court.

free himself, at which point [Appellant] ripped up the papers that Mr. Paige had just printed at Office Depot. In an attempt to get away from [Appellant], Mr. Paige threw a flowerpot at him. [Appellant] then chased Mr. Paige up his front steps and stomped on his lower leg, causing Mr. Paige to trip and fall. Prior to leaving, [Appellant] stated, "I told you I'll be back."

Mr. Paige testified that, prior to this incident, he had a Ring [doorbell] camera installed by his front door. In the aftermath of the incident, he observed that his Ring camera was missing. Unfortunately, the Ring camera did not capture any footage of the above incident. However, a neighbor's camera captured some of the events, and that video was played at trial. The video depicted [Appellant] and Mr. Paige in a heated altercation; it showed [Appellant] ripping up papers, after which Mr. Paige threw a flowerpot at [Appellant], followed by [Appellant] stepping on Mr. Paige's leg as he tried to run up the steps, causing him to fall. The video also showed [Appellant] standing over Mr. Paige with his hand by the front door – although it did not clearly depict [Appellant] taking the Ring camera. [However, it does depict a flash of light coming from near the doorway when Appellant places his hand near the door.]

Mr. Paige testified that his right knee was dislocated during the incident, which caused him a great deal of pain. His girlfriend called 9-1-1. After he provided a statement to police, Mr. Paige was transported to the hospital. Upon evaluation, Mr. Paige was assessed with a right patella dislocation and right knee contusion. The Commonwealth submitted photographs from the date of the incident depicting the injuries to Mr. Paige's knee. Mr. Paige testified that prior to the incident he never had any problems with his right knee. As a result of the incident, he underwent surgery to repair his patella in April 2021.

On cross-examination, Mr. Paige acknowledged that the video did not capture [Appellant] placing him in a choke hold, but it picked up right after that point. Mr. Paige also acknowledged that the video showed him throwing a flowerpot at [Appellant], and [Appellant] chasing and tripping him. Additionally, Mr. Paige acknowledged that his hospital records state, "[h]istory of present illness: Patient states he was running and fell and then was unable to bend his knee." However, Mr. Paige explained that the above history concerned the incident at issue, not a separate or prior incident. Nonetheless, Mr. Paige acknowledged that his [x]-

rays indicated "no acute fracture or dislocation" and a "[] lesion suggesting prior injury to the medial collateral ligament [("MCL")]." Mr. Paige further acknowledged that his police statement contained no reference to a "choke hold" – which he attributed to "not being the person responsible for writing the report." Finally, Mr. Paige was asked if he had ever been convicted of a crime of dishonesty, to which he responded, "[n]o."

Prior to resting, the Commonwealth introduced stipulated evidence establishing that Mr. Paige sought medical attention on January 5, 2021, at 6:51 p.m. His [x]-rays showed no acute fracture or dislocation; however, he was diagnosed with a patella dislocation and knee contusion. Mr. Paige was instructed to follow up with an orthopedic physician, and he underwent surgery for a right patella tendon rupture on April 7, 2021.

For his case-in-chief, [Appellant] introduced stipulated evidence establishing that: (1) if called, the Clerk of Quarter Session would testify that Mr. Paige has a 2017 conviction for giving false identification to law enforcement, which would be *crimen falsi*; and (2) if called, Ms. Michael Pickney would testify that she knows [Appellant], and his reputation in the community is that of a non-violent person. [Appellant did not testify.]

Trial Court Opinion, 11/8/22, at 2-4 (cleaned up).

At the conclusion of trial, the trial court found Appellant guilty of the crimes indicated hereinabove but acquitted him of, *inter alia*, aggravated assault. Appellant was subsequently sentenced and filed a post-sentence motion requesting a new trial, asserting the verdicts were against the weight of the evidence. The court denied the motion and this timely appeal followed.

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following two issues for our review:

I.     Was not the evidence insufficient as a matter of law to establish the offenses of theft by unlawful taking or receiving stolen property where the evidence failed to establish that Appellant is the person who took the complainant's ring camera, or that he ever possessed it?

- 3 -

II. Did not the trial court abuse its discretion in deciding that the verdict was not against the weight of the evidence so as to shock the trial court's conscience and sense of justice, and as such denying the motion for a new trial?

Appellant's brief at 4.

Regarding Appellant's challenge to the sufficiency of the evidence, we consider this claim mindful of the following well-settled standard:

When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up). This Court has further held that, in the context of sufficiency of the evidence questions, "something more than mere presence at the scene of the crime must be shown to convict one of the participants in the commission of [a] crime." *Commonwealth v. Gladden*, 665 A.2d 1201, 1210 (Pa.Super. 1995) (*en banc*) (citation omitted).

Appellant challenges both of his theft convictions. Concerning theft by unlawful taking, a "person is guilty of theft if he unlawfully takes, or exercises

- 4 -

unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). As to receiving stolen property, a "person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).

On appeal, Appellant argues that the circumstantial evidence was insufficient to prove that he was the person who stole the doorbell camera from Mr. Paige's front door. He purports that the video footage entered into evidence does not clearly show the camera or Appellant taking it, and in his view shows Appellant walking away from the house emptyhanded. *See* Appellant's brief at 16. He also highlights that Mr. Paige never testified as to when he had last seen the camera prior to the incident. *Id*. Appellant contends that at most, the evidence shows that he was present near the door on the day in question, but his presence alone does not support the theft convictions. *Id*. at 14-16. As such, Appellant believes that the trial court, sitting as factfinder, was not entitled to infer that Appellant was guilty of stealing the camera.

In rejecting this claim, the trial court found that Appellant assaulted the victim near where the camera was located, and at one point placed his hand along the front door of Mr. Paige's residence. *See* Trial Court Opinion, 11/8/22, at 10. The court further determined that Appellant had motive for

taking the camera, either in spite arising from the altercation or to conceal the assault. *Id*. It also observed that Mr. Paige testified at trial that the Ring camera was missing in the aftermath of the attack. *Id*.

In the same vein, the Commonwealth contends that the video shows Appellant "swiping" at the door frame, near where the camera would be located, and that there is a light flash as Appellant's arm reaches toward the camera. *See* Commonwealth's brief at 9. It posits that a factfinder could reasonably infer that the flash resulted from Appellant ripping the camera from the wall. *Id*. The Commonwealth additionally notes that there was uncontradicted testimony from Mr. Paige that his girlfriend discovered the camera was missing right after the assault ended. *Id*.

Upon review of the certified record, we agree with the trial court and the Commonwealth that there was sufficient evidence supporting Appellant's convictions for theft by unlawful taking and receiving stolen property. While the Commonwealth lacked direct evidence of Appellant taking and retaining the stolen camera, those acts are reasonably inferred from the circumstantial evidence. First, it is clear that Appellant had both the opportunity and motive to take the camera. He stood at the doorway to the residence right after he assaulted Mr. Paige and tore up his belongings, in broad daylight. Further, the evidence went beyond merely placing Appellant at the scene of the theft. *Gladden*, *supra* at 1210. The flash from the wall, which occurred right at the time Appellant placed his hand near the door, supports the conclusion that

something electrical was disconnected at that moment. Finally, Mr. Paige's undisputed testimony that his girlfriend noticed the camera missing in the immediate aftermath raises an inference that Appellant engaged in the theft during the incident. In all, we cannot conclude that "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances." **Roberts**, **supra** at 1223.

We are not persuaded by Appellant's argument that because the video does not conclusively show him walking away from the residence with the camera in hand, and because there was no testimony as to the last time anyone saw the camera before the incident, he cannot be found guilty of theft. While these facts collectively are perhaps indicative of the possibility that an unknown person stole the camera prior to the altercation, that does not undermine the sufficiency of the circumstantial evidence in this case. **See Commonwealth v. Brockington**, 230 A.3d 1209, 1212 (Pa.Super. 2020) (stating that that "[t]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence"). As factfinder, the trial court was free to resolve any doubts in favor of the Commonwealth.

Further, we find this matter distinguishable from the two cases Appellant cites as comparable in his brief. **See Commonwealth v. Store**, 463 A.2d 1108 (Pa.Super. 1983) (finding that the circumstantial evidence was insufficient to support convictions for theft when, *inter alia*, the

Commonwealth could not prove that numerous other customers in the jewelry store could have taken the stolen rings in the hours after the defendant was last observed in the store); ***Commonwealth v. Lowry***, 452 A.2d 552 (Pa.Super. 1982) (holding that the Commonwealth failed to prove that Lowry committed a theft based on circumstantial evidence when there were other people present at the scene and no one observed the items being taken). Here, unlike in either of those cases, there was no significant lapse in time from when the theft occurred to the discovery that the item was missing. Nor were there any other persons in the immediate vicinity of the front door during the assault who could have taken the camera. For all of the reasons above, Appellant is not entitled to relief on this claim.

Appellant next argues that his verdicts are against the weight of the evidence, and thus the court erred in denying his request for a new trial. The following law applies to our review of Appellant's claim:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Arias***, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Therefore, we must determine whether the trial court, in rejecting Appellant's challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." ***Commonwealth v. Clay***, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

Appellant argues that the convictions here shock the conscience because they depend upon the testimony of Mr. Paige, which he believes was contradicted by the video footage, medical records, and stipulations. ***See*** Appellant's brief at 17. More specifically, he highlights that the video refutes any contention that Appellant placed Mr. Paige into a choke hold or otherwise assaulted him. ***Id***. at 20-21. Further, Appellant asserts that the medical records suggest evidence of a prior knee injury, despite Mr. Paige's testimony that his knee was "100 percent" prior to the incident. ***Id***. at 21. Finally, he laments that Mr. Paige denied being convicted of a crime of dishonesty, despite the subsequent stipulation that he had a 2017 conviction for false identification to law enforcement. ***Id***. at 21-22.

In addressing this claim, the trial court stated that, "having presided as the trier of fact, the [c]ourt is confident that its verdict of guilty is soundly supported by the weight of the evidence. The [c]ourt found the testimony of Mr. Paige to be detailed, consistent, and corroborated by the physical evidence[.]" Trial Court Opinion, 11/8/22, at 6. The court ascertained from

the video that Appellant did step on Mr. Paige's leg as he retreated, which formed the basis of the conviction for simple assault. *Id*. at 3. It did not rely on any allegation from Mr. Paige about being placed in a headlock as a basis for that conviction. Concerning the medical records, the court found that the statement in the report concerning a possible prior MCL injury was immaterial to "Mr. Paige's indisputably injured patella," and further noted that it properly considered the extent of Mr. Paige's injuries when it acquitted Appellant of aggravated assault. *Id*. at 6. Finally, it stated that although Mr. Paige denied having a conviction for false identification to law enforcement in contravention to a later stipulation, this did not require the court to disregard the remainder of Mr. Paige's testimony, especially any supported by the video. *Id*. at 7.

We find no abuse of discretion with the court's conclusion that the verdict was not conscience-shocking. The court reconciled discrepancies to the extent possible and appropriately disregarded any of the testimony that was contradicted by objective evidence. Indeed, in so doing, the court acquitted Appellant of two charges. Accordingly, no relief is due.

Since Appellant presents no meritorious issues on appeal, we have no cause to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/29/2023</u>